# Exhibit 1

 **CT Corporation**

# Service of Process Transmittal
10/09/2019
CT Log Number 536407020

**TO:**    ATTN: LEGAL
SCOPELY, INC.
3530 HAYDEN AVE STE A
CULVER CITY, CA 90232-2413

**RE:**    **Process Served in Delaware**

**FOR:**    SCOPELY, INC.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Vernon Ackies, Pltf. vs. SCOPELY, INC., DFT. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Certifications, Exhibits |
| **COURT/AGENCY:** | Essex County Superior Court, NJ<br>Case # ESXL00694619 |
| **NATURE OF ACTION:** | Claim for relief of damages |
| **ON WHOM PROCESS WAS SERVED:** | NRAI Services, LLC, Dover, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/09/2019 at 14:52 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 35 days after receiving this summons, not counting the day you receive it |
| **ATTORNEY(S) / SENDER(S):** | Bob Kasolas, Esq.<br>Brach Eichler LLC<br>101 Eisenhower Parkway<br>Roseland, NJ 07068<br>973-228-5700 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780116014968<br><br>Image SOP<br><br>Email Notification,  BECKIE LAW  beckie@scopely.com |
| **SIGNED:**<br>**ADDRESS:** | NRAI Services, LLC<br>8020 Excelsior Dr Ste 200<br>Madison, WI 53717-1998 |
| **For Questions:** | 877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Summons, Complaint, Attachment | By Process Server on 09/25/2019 at 15:23 | ATTN: LEGAL SCOPELY, INC. | 536316031 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Bob Kasolas, Esq. (030492002)
Mark E. Critchley, Esq. (014112012)
BRACH EICHLER LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Attorneys for Plaintiff Vernon
Ackies (Individually and on Behalf
of All Similarly Situated)

|  |  |
|---|---|
| VERNON ACKIES (INDIVIDUALL AND ON BEHALF OF ALL SIMILARLY SITUATED), <br><br>      Plaintiff, <br><br>          v. <br><br>SCOPELY, INC., <br><br>      Defendant. | SUPERIOR COURT OF NEW JERSEY <br> ESSEX COUNTY: LAW DIVISION <br> DOCKET #: ESX-L-006946-19 <br><br> Civil Action <br><br> **SUMMONS** |

**The State of New Jersey, to the Above Named Defendants:**

**SCOPELY, INC.**

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The amended complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro_se/10153_deputyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro_se/10153_deputyclerklawref.pdf.

DATED: October 7, 2019                 *s/s Michelle M. Smith*
                                        Michelle M. Smith


Name of Defendant to be served:        Scopely, Inc.

Address for Service:                    c/o National Registered Agents, Inc.
                                        160 Greentree Drive
                                        Stte 101
                                        Dover, DE  19904

Bob Kasolas, Esq. (030492002)
Mark E. Critchley, Esq. (014112012)
BRACH EICHLER LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Attorneys for Plaintiff Vernon
Ackies (Individually and on Behalf
of All Similarly Situated)

| | |
|---|---|
| VERNON ACKIES (INDIVIDUALL AND ON BEHALF OF ALL SIMILARLY SITUATED),<br><br>    Plaintiff,<br><br>        v.<br><br>SCOPELY, INC.,<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY: LAW DIVISION<br>DOCKET #: ESX-L-6946-19<br><br>Civil Action<br><br>**FIRST AMENDED CLASS<br>ACTION COMPLAINT** |

Plaintiff Vernon Ackies ("Plaintiff" or "Ackies"), individually and on behalf of all similarly situated, by way of this First Amended Class Action Complaint against defendant Scopely, Inc. ("Defendant" or "Scopely"), hereby states as follows:

## NATURE OF THE ACTION

1.      Scopely is the publisher of the online video game "Star Trek Fleet Command." Star Trek Fleet Command ("STFC") is a role-playing video game available on smartphones and other mobile devices. STFC is based on the Star Trek movie franchise in which players explore star systems, build spaceships, complete missions and battle other players. STFC is available on Android and Apple iOS platforms.

2.      STFC is free to play but players can purchase virtual goods in exchange for real-world money to access additional content. This virtual economy allows players to pay real-world money to upgrade and improve their spaceships, space stations and characters, among other things.

By spending real money on these "virtual goods," players improve their abilities to defeat other players and to advance further in the game.

3.     However, Scopely fraudulently exploited this virtual economy for its benefit and to the detriment of its players.  Scopely engaged in a fraudulent and deceptive scheme by, *inter alia*, decreasing the value and effectiveness of virtual goods after their purchase by players, misrepresenting the capabilities and benefits of virtual goods, and allowing players to lose virtual goods they paid for through no fault of the player.  Simply stated, Scopely took advantage of, and defrauded, its players through numerous unconscionable commercial practices and fraudulent acts to extract as much money as possible from them.

4.     Thus, Ackies brings this action individually and on behalf of all similarly situated individuals seeking compensatory, punitive, actual and treble damages, attorneys' fees and costs, and injunctive relief to halt Scopely's deceptive and fraudulent business practices to prevent harm to additional consumers, among other relief.

## THE PARTIES AND VENUE

5.     Ackies is a citizen of the State of New Jersey with a principal residence of 120 Rutgers Street, Apt. E6, Belleville, New Jersey 07109.

6.     Scopely is a Delaware corporation with its principal place of business located at 3530 Hayden Avenue, Culver City, California 90232.

7.     Venue is proper in New Jersey because Ackies resides in Essex County, New Jersey, Scopely purposefully directed its activities to New Jersey residents, Scopely directed advertisements for STFC to New Jersey residents, and Scopely accepted real-world payments from New Jersey residents for virtual goods.

2

## THE FACTS

**A.**    **Background and Gameplay of STFC**

8.    STFC is a role-playing mobile video game available on Android and Apple iOS platforms themed after the popular Star Trek movie franchise.  STFC was designed by Digit Game Studios and was initially released on November 29, 2018.  Scopely operates and controls STFC.

9.    STFC is what is commonly referred to as a "massively multiplayer online game" or "MMO."  MMOs are videogames that allow a large number of players to participate simultaneously over an internet connection.  STFC takes place in a shared, online world that the player can access after installing the game software on their mobile smartphone or tablet.  MMOs enable players to cooperate and compete with other players across the world.

10.    In STFC, users play as a space ship captain and start with a small space station and one space ship.  Players explore a virtual space system populated with other live individual players.  Players advance through STFC by completing various missions and battling other players.  As they advance through STFC, players can purchase resources and upgrades with real-world money to improve their abilities within STFC, such as upgraded space stations and space ships.

·11.    The description of STFC on the Apple App Store and Android Google Play Store states, "You have the conn! Summon your skills in strategy, combat, diplomacy, and leadership to master the dangerous universe of Star Trek Fleet Command."

12.    The description goes on to state, "Join Millions of players -- forge alliances, defeat your enemies, and build an epic fleet to secure, or dominate, the galaxy.  Explore strange new worlds, seek out new life and new civilizations, boldly go where no one has gone before!"

13.    The description advises players to be prepared to do the following:

BE:10617277.1/ACK022-276279

-Experience epic conflict in a vast, dynamic galaxy
-Collect, build, and upgrade iconic ships
-Take the conn and control ships in star system and galaxy views
-Encounter famous Star Trek characters in an epic, galaxy-spanning storyline
-Help locals, fight pirates, or negotiate peace in hundreds of unique missions
-Recruit famous officers with unique, tactical abilities
-Ally yourself with Federation, Klingon, or Romulan forces
-Work with and against thousands of other players in real-time
-Build, upgrade, and defend your starbase
-Discover new technologies, ship upgrades, and resources
-Create or join powerful player Alliances to dominate star systems and become the most powerful players in the galaxy

**B.     The Virtual Economy of STFC**

14.     STFC is free to play.  However, once the player enters STFC, the player can purchase virtual goods with real-world money to upgrade, improve and enhance their abilities and standing in STFC in comparison to other players.

15.     These virtual goods purchased with real-world money include, *inter alia*, "resources," "materials," "character cards," "faction credits," and "ship blueprints."  Players can also purchase "packs" such as "Master Station Upgrade Pack" and "Ultra Ship Power Pack," which include various tokens or credits that can be used to upgrade a player's character, space station or space ship.  The virtual goods range in price going as high as $99.99.

16.     The following screenshots are examples of virtual goods that players can purchase in STFC to upgrade, improve and enhance their character, space station and space ship, among other things:

BE:10617277.1/ACK022-276279





5





17. Purchasing these upgrades with real money helps players increase their power, ability, standing and/or advantages within STFC relative to other players.

18. Making upgrades to a player's space station and space ship through the purchase of virtual goods is an important function in STFC. Without making these upgrades, which cost real money, competitive players are unable to advance far in STFC and are easily defeated by other players who have made such purchases and upgrades.

19. In fact, Scopely makes several representations regarding the importance of

BE:10617277.1/ACK022-276279

upgrading a player's space station and space ship, including: "Collect, build, and upgrade iconic ships," "build an epic fleet to secure, or dominate, the galaxy," "Build, upgrade, and defend your starbase," and "Discover new technologies, ship upgrades, and resources."

20.    Scopely also included the following screenshots in its game preview:





7



21.   Scopely makes these representations to stress and highlight the importance of upgrades in STFC, which must be purchased with real money.

22.   At the time a player purchases these virtual goods in STFC, there is no disclosure to the player that there is a potential devaluation or elimination of the virtual good at the sole discretion of Scopely. There is also no disclosure to the player at the time of purchase that the player could lose the value or effectiveness of the virtual good, or the entire virtual good completely.

**C.   Scopely's Fraudulent Conduct and Exploitation of their Virtual Economy**

23.   When STFC was initially released on November 29, 2018, the publishers had represented to the public that STFC had completed its testing or "beta" phase, and was consequently "ready" for release to both free and paying players.

24.   When players decide to become paying players, they reasonably believed: (a) that the software had completed "beta" testing and was in substantially playable form; and (b) that Scopely would make changes to the "rules" of the game in good faith. Both of these reasonable

8

beliefs turned out to be intentionally and knowingly false.

25.    In order to advance through STFC and defeat others, players often and routinely buy virtual goods to upgrade and improve their characters, space stations and space ships. Players reasonably believe that the value, capabilities and effectiveness of these purchased goods would not change. However, Scopely has engaged in fraudulent and deceptive conduct to exploit this virtual economy and players' desire to move further and advance in STFC.

26.    Scopely often intentionally misrepresented the cost of STFC's virtual goods. STFC deducted more resources, materials and/or in-game currencies from a player's in-game balance than the "cost" represented to the player prior to purchase.

27.    In addition, players paid for virtual goods that had stated benefits and capabilities at the time of purchase and on the purchase screen, but once purchased and implemented in STFC, players did not receive the benefits and capabilities they had paid for.

28.    For example, under the rules of STFC, players could acquire or purchase "shields" to protect their "space station" from being attacked by other players. Multiple issues with the software caused the player's shield to be unintentionally and unknowingly deactivated, or in some cases, merely bypassed and ignored by attacking players. As a result, players who had paid for in-game "resources" with real-world money lost the investment and value of what they paid for (and did not receive the value of what they paid for) through no fault of their own, and contrary to their reasonable expectations with respect to the rules and mechanics of STFC.

29.    Scopely also misrepresented the effectiveness and capabilities of virtual goods purchased by players. Players could spend resources, materials and other in-game currencies to "upgrade" various aspects of their space stations, ships and characters. In some instances, players would spend in-game currency to improve the time it would take to repair a ship. For example, if

9

a player purchased an upgrade with real money to reduce a space ship's repair time to ten (10) minutes, the "actual" repair time once a player initiated a repair would be eleven (11) minutes. This known and uncorrected issue with the software cost players the unnecessary loss of in-game currency paid for with real-world money, resulting in a devaluing of the item purchased by players.

30.     In addition, the software application would either freeze, crash and/or not load certain areas of "space" properly.  As a result, when a player would send a "ship" to a specific location where "hostile" ships controlled by the software's artificial intelligence were present, the player's ship would be destroyed.  By the time the player was able to access the application, load the application, and have the area of "space" load properly, the player's ship would already be destroyed through no fault of the player, and contrary to the player's reasonable expectations with respect to the rules and mechanics of STFC.  This would require the player to unnecessarily spend in game resources and "repair boosts" (more in-game currencies) to repair any ships destroyed through no fault of their own, and contrary to their reasonable expectations with respect to the rules and mechanics of STFC.

31.     The benefits of certain characters and research were also misleading.  For example, "Prime" research bonuses were advertised as increasing "damage" by 100% (i.e., doubling damage).  Only when certain players began to test the damage output and complain to customer support did Scopely "clarify" that a 100% increase does not actually mean a 100% increase, but a 100% "increase to" a more limited definition or component of the feature being modified (e.g., damage, defense, etc.).  Phrased differently, players purchased virtual goods with real-world money but did not receive the in-game benefits they paid for.

32.     In February 2019, following a series of numerous complaints from many players of STFC, Scopely released the first of many "updates" to STFC.  The updates purported to correct

10

and/or fix certain aspects of the application's software that was causing issues not reasonably anticipated by the players playing STFC. The updates though, also made substantial changes to the actual "rules" of STFC, which directly affected the in-game economy and cost structure. This in turn directly affected the value of all prior real money purchases players had made just a few months prior to said updates.

33.     The February 2019 update, as well as a series of subsequent updates, substantially changed the rules of STFC and the in-game economy, effectively devaluing all prior purchases made by paying players. This forced players to make substantial additional purchases of virtual goods merely to maintain their pre-update rank in STFC, and was intentionally done by Scopely to force such players to make such real money purchases.

34.     Moreover, the cost requirements and progression from one level to the next were substantially different starting from Levels 20-22 (a point in STFC that most free-to-play players did not and could not have reasonably discovered on their own by February 2019). Starting from these levels, the resource and material requirements to upgrade base and ship components exponentially increased - a game progression neither disclosed nor reasonably anticipated by the average player familiar with other similar mobile games.

35.     Scopely has also engaged in deceptive and fraudulent conduct concerning in-game shields used by players to protect their space ships and space stations.

36.     In STFC, players buy various virtual goods for their space ships and space stations, but can lose those goods if their space ship or space station is attacked by other players. Players are able to use shields, which will protect the space ship or space station for a specific period of time (e.g., thirty minutes, one hour, two hours, etc.). If a shield is up, the space ship or space station is protected from attack and the player cannot lose any virtual goods.

11

37.    However, shields routinely expire prior to the end of the designated time period through no fault of the player. For example, a STFC player will put up a shield on their space station to last for four hours because they are exiting the game and cannot play during those four hours. Nevertheless, the shield will drop prior to the four-hour deadline through no fault of the player. Since no shield is up, other players can attack the space station and take many of the virtual goods purchased for the space station. Through no fault of the player, the player who put up the shield has lost many of the virtual goods he or she purchased with real-world money.

38.    Complaints made to Scopely regarding this issue with a player's shields are ignored by Scopely. Even though the shield ended prior to the designated time period through no fault of the player, Scopely refused to issue refunds for virtual goods purchased by the player.

39.    Additionally, players are able to receive push notifications to their mobile phone if they are not in the game but their space ship or space station is being attacked. There is a grace period allowing the player to enter the game and put up their shield before they lose any virtual goods. However, the push notification comes hours after the space ship or space station is attacked. Thus, the player is too late to enter the game and protect their space ship or space station by putting up a shield. With their shield down, the player is attached by other players and loses virtual goods. The player has lost virtual goods purchased with real-world money through no fault of their own. Scopely refuses to issue refunds to these players. Players rely on a game function to protect the virtual goods they purchased but are then left with no recourse when the function does not work as represented.

40.    Scopely has been aware of all these problems and has done nothing to correct them. Scopely is either intentionally orchestrating these issues so players lose virtual goods and are then forced to buy more virtual goods, or sitting idly by and allowing the issues to persist so players

12

purchase more virtual goods. In either scenario, Scopely is taking advantage of STFC players and milking as much money as possible from the players to fill their own coffers.

**D.    Scopely's Refusal to Issue Refunds or Respond to Player Complaints**

41.    Scopely makes it difficult for STFC players to file complaints. Scopely also refuses to issue refunds to players who have lost virtual goods purchased in the game with real-world money through no fault of the player.

42.    If a player loses a virtual good through no fault of their own and makes a complaint to Scopely, Scopely will initially respond to the player's complaint but will then stop responding to the player.

43.    Scopely does not issue refunds to players. Refunds are not issued even if the virtual good was lost through no fault of the player (e.g., a player's shield is set to stay up for four hours but drops after two hours through no fault of the player and the player's base is attacked and virtual goods are taken by other players) or if a virtual good does not operate as represented (e.g., a "pack" failing to contain an item represented to be included in the pack).

44.    For players who are able to obtain refunds directly from Apple, Scopely has deducted the player's in-game currencies by the amount received in the refund.

45.    Scopely has also banned players from STFC who discussed refunds with other players or helped other players obtain refunds.

46.    Fed up with Scopely's fraudulent practices, several players joined together to formally complain to Scopely. Attached as **Exhibit 1** is a copy of a May 15, 2019 letter sent to Scopely by a group of STFC players titled, "Regarding the Unfair Treatment of its Players in Star Trek Fleet Command." The letter outlined the numerous problems with STFC and requested that Scopely take corrective action to fix those problems and defects. Scopely ignored the letter and

13

took no action to fix the problems.

47. Since the filing of Plaintiff's initial Complaint, Scopely has also discouraged players from joining this lawsuit and has attempted to conceal the lawsuit from players.

48. "Discord" is an online server, unaffiliated with Scopely, where STFC players can enter chatrooms to discuss all things related to STFC, such as gameplay, strategy and complaints, among other things.

49. Since the filing of Plaintiff's Complaint, players have posted copies of Plaintiff's Complaint to inform other players of the pending lawsuit. Scopely has deleted references to the Complaint to hide the lawsuit and discourage people from joining the lawsuit. Below are screenshots of Scopely deleting references to Plaintiff's Complaint in the Discord chatroom:



14



50.    Such actions are consistent with Scopely's mistreatment of its players who file complaints or obtain refunds.

## CLASS ACTION ALLEGATIONS

51.    The state law claims in this First Amended Complaint are brought by Ackies under Rule 4:32-1 on behalf of himself and of a class consisting of all similarly situated persons who have been subjected to Scopely's fraudulent and deceptive conduct in STFC.

52.    While the precise number of class members is presently unknown to Ackies, upon information and belief, the amount of class members numbers in the hundreds, if not thousands. Therefore, the number of class members is so numerous that joinder of all class members is impracticable.

53.    The class members will be readily identifiable from business records in Scopely's possession.  The class members will be notified of this class action using the methods of notice

15

that are customarily used in class actions.

54.    Ackies' claims are typical of the class members since all class members purchased virtual goods in STFC with real money, but were then subjected to Scopely's fraudulent and deceptive schemes, including but not limited to, a decrease of the value of the virtual goods after their purchase, misrepresentation of the capabilities and benefits of the virtual goods, and loss of the virtual goods after their purchase through no fault of the player.

55.    As a result of Scopely's fraudulent and deceptive conduct, the class action mechanism is superior to all other available means for the fair and efficient adjudication of this controversy because:

(a)    the expense and burden of individual litigations makes it difficult, if not impossible, for individual class members to obtain relief for Scopely's unlawful conduct;

(b)    the joinder in a single action of all individual class members is impractical; and

(c)    the damages suffered by each individual class member may be in amounts that make it impractical for each class member to individually pursue a claim.

56.    Common questions of law and fact exist as to all class members and predominate over any questions that solely affect individual class members. These common questions of law and fact include:

(a)    Whether Scopely engaged in a systematic and widespread scheme to decrease the value of virtual goods after their purchase;

(b)    Whether Scopely engaged in a systematic and widespread scheme to misrepresent the capabilities of virtual goods purchased in STFC;

(c)    Whether Scopely engaged in a systematic and widespread scheme whereby the player could lose the virtual good after purchase through no fault of the player;

16

(d)     Whether Scopely engaged in a systematic and widespread scheme to change the

rules of STFC whereby previously purchased virtual goods no longer had the same

value or represented effectiveness;

(e)     Whether the fraudulent conduct of Scopely outlined above constitutes a violation

of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and

(f)     Whether the fraudulent conduct of Scopely outlined above constitutes an

unconscionable commercial practice under the CFA.

57.     Ackies will fairly and adequately protect the interests of the class members.  Ackies

has no interest antagonistic to the interests of the other class members and has retained counsel

experienced in handling class action litigations.

58.     Scopely's Terms of Service attempt to include a class-action waiver, but such

attempted waiver of consumer-fraud class actions is invalid and unconscionable under New Jersey

law and violates New Jersey public policy.

59.     Scopely's Terms of Service also attempt to include an arbitration provision, but

such provision is unenforceable because the CFA is a statutory right and cause of action that is not

expressly waived by such arbitration provision by STFC players.

60.     Moreover, both the "class action waiver" and arbitration provision in the Terms of

Service were fraudulently induced by Scopely, and are therefore unenforceable.

61.     Neither the arbitration provision or the "class action waiver" provision in the Terms

of Service are applicable to the in-game purchase of virtual goods because such terms are not

published, visible or present on the screen at the time such virtual goods are advertised, marketed

and/or purchased.

17

## COUNT ONE

**(Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.)**

62.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

63.    The CFA, specifically N.J.S.A. 56:8-2, provides as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

64.    The CFA defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."

65.    Scopely is a "person" as defined by the CFA and the virtual goods sold by Scopely in STFC constitute "merchandise," as defined by the CFA.

66.    Scopely engaged in various unconscionable commercial practices, deception, fraud, and misrepresentations in violation of the CFA by, *inter alia*, decreasing the value of virtual goods after purchase by the player, misrepresenting the capabilities and benefits of virtual goods before and after purchase, and allowing players to lose virtual goods these players paid for through no fault of their own.

67.    As a result of the unlawful conduct of Scopely described above, Ackies and the class members suffered an ascertainable loss, *i.e.*, the real-world money spent by players in STFC to purchase virtual goods. This entitles Ackies and the class members to treble damages and all attorneys' fees and costs incurred in prosecuting this action.

68.    As a result of Scopely's unlawful conduct, Ackies and the class members have been

18

and will continue to be damaged.

## COUNT TWO

### (Breach of Contract)

69.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

70.    By purchasing the virtual goods in STFC with real money, players and Scopely entered into a contract in which the virtual goods would have a certain value and capabilities in STFC in exchange for the payment of real-world money by the player.

71.    Scopely breached that contract by misrepresenting the value and capabilities of the virtual goods, among other things, and by engaging in actions and conduct that allowed for the loss of the virtual goods through no fault of the players.

72.    As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT THREE

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

73.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

74.    The covenant of good faith and fair dealing is implied in the contract between all STFC players and Scopely concerning the purchase of virtual goods.

75.    Scopely breached the implied covenant of good faith and fair dealing by altering the value and capabilities of virtual goods in STFC after their purchase by players.

76.    As a result, Ackies and the class members have been and will continue to be damaged.

19

## COUNT FOUR

### (Conversion)

77.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

78.    Ackies and the class members purchased virtual goods from Scopely in STFC. However, Scopely misrepresented the value and capabilities of those virtual goods and decreased the value of those virtual goods, among other things.

79.    Scopely's actions and conduct constitute the intentional and unauthorized exercise of control and dominion over the monies of Ackies and the class members.

80.    As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT FIVE

### (Unjust Enrichment)

81.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

82.    Ackies and the class members purchased virtual goods from Scopely in STFC. However, Scopely misrepresented the value and capabilities of those virtual goods and decreased the value of those virtual goods, among other things.

83.    Scopely's actions and conduct resulted in the unjust enrichment of Scopely at the detrimental expense of Ackies and the class members.

84.    As a result, Ackies and the class members have been and will continue to be damaged.

20

## COUNT SIX

### (Legal Fraud)

85.     Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

86.     Scopely made intentional and material misrepresentations and omissions to Ackies to induce him into purchasing virtual goods in STFC.  Upon information and belief, Scopely made similar intentional misrepresentations and omissions to the class members to induce them into purchasing virtual goods in STFC.

87.     Ackies and the class members reasonably relied upon Scopely's material misrepresentations and omissions to their financial detriment by purchasing the virtual goods in STFC.

88.     As a result, Ackies and the class members have been and will continue to be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the class members, demands judgment against Scopely granting the following relief:

A.      certifying this action as a class action;

B.      designating plaintiff Vernon Ackies as class representative;

C.      declaring Brach Eicher, LLC as class counsel;

D.      authorizing the issuance of notice at the earliest possible time to all STFC players. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to participate in this lawsuit;

E.      declaring Scopely in violation of the New Jersey Consumer Fraud Act, N.J.S.A.

56:8-1 et seq.;

    F.     permanently enjoining Scopely from engaging in, continuing to engage in, or doing

any acts or practices in violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.,

including, but not limited to, the act and practices alleged in this First Amended Complaint;

    G.     actual damages, consequential damages and direct damages;

    H.     compensatory damages;

    I.     treble damages;

    J.     punitive damages;

    K.     attorneys' fees and costs; and

    L.     any other relief the Court deems just and proper.

                   **BRACH EICHLER LLC**
                   *Attorneys for Plaintiff Vernon*
                   *Ackies (Individually and on Behalf*
                   *of All Similarly Situated)*

                   Bob Kasolas, Esq.

Dated: October 7, 2019

BE:10617277.1/ACK022-276279

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Bob Kasolas, Esq. is hereby designated as trial counsel for all triable issues.

**BRACH EICHLER LLC**
*Attorneys for Plaintiff Vernon*
*Ackies (Individually and on Behalf*
*of All Similarly Situated)*


_____
Bob Kasolas, Esq.

Dated: October 7, 2019




## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

**BRACH EICHLER LLC**
*Attorneys for Plaintiff Vernon*
*Ackies (Individually and on Behalf*
*of All Similarly Situated)*


_____
Bob Kasolas, Esq.

Dated: October 7, 2019


23

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy herein is not the subject of any other action pending in any court or of a pending arbitration or other action. I certify that I know of no other parties who should be joined in this lawsuit at this time. I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

> **BRACH EICHLER LLC**
> *Attorneys for Plaintiff Vernon*
> *Ackies (Individually and on Behalf*
> *of All Similarly Situated)*
>
>
> Bob Kasolas, Esq.

Dated: October 7, 2019

## CERTIFICATION PURSUANT TO R. 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

> **BRACH EICHLER LLC**
> *Attorneys for Plaintiff Vernon*
> *Ackies (Individually and on Behalf*
> *of All Similarly Situated)*
>
>
> Bob Kasolas, Esq.

Dated: October 7, 2019

24

# EXHIBIT 1

Jason (AKA Firestorm)
*Representing The Scopely Boycott Initiative*
*Calgary, Alberta, Canada*

May 15th, 2019

Walter Driver
*Co-Founder, Chairman & Co-CEO Scopely Inc.*
*3530 Hayden Ave*
*Culver City, CA 90232-2413*

**RE: Regarding the Unfair Treatment of its Players in Star Trek Fleet Command**

Dear Mr. Driver,

I am reaching out to you as representative of a group of hundreds of players across multiple servers of your Star Trek Fleet Command mobile game. I hope to bring to light certain problems with the game that have brought about a great deal of concern within your player base. You will find attached to this letter a list of signatories as well as a detailed list of in-game issues for your team to address.

We are a group of passionate fans and avid gamers from various walks of life, backgrounds and interests all united in our passion for the IP you are licencing from CBS. We are, amongst other things, programmers, accountants, lawyers, engineers, students, retirees, business men and women and have come to agree on the contents of this letter and the list we're today providing you.

Over the course of the last few months, your player base and specifically the members of my group have noticed and presented a great deal of issues to your support team. Although many of these issues were acknowledged by your team when they were initially reported, very few, if any, have since been addressed in the last few months to the growing frustration of your client base. Additionally, on your game's official discord, players have been systematically banned when bringing up these issues and there's been documented and widespread efforts on the part of your team to censor any kind of discussion on these topics.

We hope that by bringing these issues to your direct attention, the current situation we find ourselves in will resolve itself and avoid any further escalation.

We would thus ask that you or members of your team address each of these items directly and specifically, outline how and when they will be fixed and, when applicable, proactively propose a compensation plan for those who have been affected by these issues.

1

1. Do a better job at customer service
   a. Discord:
      As of now, Scopley's customer service team bans players who express grievances or concerns about bugs or gameplay issues. Permanently banning users for anything but bad behaviour (trolling, spamming, harassment, hate speech) is unacceptable.

      Community guidelines should be established and only bans with a specific duration should be used following a clear and transparent progression. Bans should ALWAYS be followed by a communication from your team outlining the duration, the reason and an appeal process.

      Until such guidelines are implemented, we ask that all bans handed out by your team be reversed and clear directives be handed out to your customer support team unless they are threatening some sort of violent act.

   b. In-game chat:
      Like with Discord, clear community guidelines should be implemented and available for all to see. Bans should always be followed by a message from your team outlining the elements mentioned in 1.a.

      Your customer service bot should be either significantly improved, or retired. Often responses that have nothing to do with the query will be provided repeatedly despite screenshots and detailed explanations. Your customer service representatives will often suggest the same fixes (restart game, clear localization, restart phone) to no avail. Ask us if the solution proposed solves our issue and escalate cases that are unresolved.

      If a customer service representative is unable to resolve an issue because of the nature of the request, he should immediately escalate it instead of trying to offer inappropriate solutions.

      Customer service interactions should be made available to download and the chat history with customer support should be available.

   c. Updates and bugs:
      Provide comprehensive release notes documentation prior to any release. Explain in detail all of the new features being added along with the testing that was completed. Explain in detail bug fixes that have been addressed along with the testing that has been performed.

   d. Overall tone and approach towards your customers

2

The Star Trek fanbase is one of the oldest sci-fi franchises still relevant in our media landscape. Proportionately it has undoubtedly one of the most age diverse fan bases. Fans who have been loving and celebrating Star Trek well before Scopley, mobile gaming and, in some cases, mobile phones ever existed. As adults, we expect to be treated with respect, consideration and maturity by your team.

We are fully aware and cognizant of the fact that your IP licence, business model and the current market for mobile gaming dictates how and what you prioritize. That said, be open and honest about your goals and the direction you are taking. Drop the double talk and treat us like adults. Some of us have spent thousands of dollars or a proportionally significant amount of their disposable income on this game out of passion for the IP you are licensing from CBS Interactive; show the appropriate level of respect.

2. Fix bugs and gameplay issues as frequently as you implement new profit generating features

    a. Many of the issues that have been reported to your team since the BETA have still not been resolved. Many of these are game breaking.

    We will list some of the worse of these in Annex B part II, but most at this point are well documented and have been reported to your customer service team repeatedly on every communication channel you have made available to us.

    We ask that you provide us a timeline addressing when and how you plan on addressing these bugs and adopt a more systematic and structured approach to bug reporting.

    b. Balance the gameplay and the in-game economy
    As we've listed in part II of Annex B, the game is plagued with various imbalances and bottlenecks related to the in-game economy.

    In many instances the prices of packs and in-game resource requirements are out of proportion with in-game resource generation.

    Resource generation rates should be public and adjusted based on each level's requirements.

    c. Fix the existing officer and ship abilities instead of introducing more of them.

3

As we've listed in part II of Annex B, the game is plagued with a great deal of officers whose ability (or abilities) either do not work as described, or do not work at all.

Fix the description of officers to match their real abilities. Indicate when an officer's ability (or abilities) do not work and in the meantime provide in-game compensation to make up for the amount of resource, time and effort players have placed into upgrading officers that do not work.

d. Refund players who have purchased packs for features that don't work
The majority of packs for sale in-game are targeted towards unlocking "Prime researches". Many of these "Prime researches" do not work at all and have not been working since the BETA. This major issue has been acknowledged by your support staff at least since November 2018 and has yet to be resolved. Yet you still allow players to purchase these packs while advertising these prime researches.

We expect you to do nothing short of refunding all players who have been misled into purchasing these packs. Apologizing for this situation and issuing an in-game warning in your store about these broken features.

3. Investigate into packs providing the wrong amounts and types of content than the one they advertised.

a. Many of our players have reported packs not providing the resource and content advertised in your store. This is a serious issue that would place you in violation of the terms of the Google Play Store and of the Apple App Store in addition to various consumer protection acts in the jurisdictions of many of our signatories.

We ask that you proactively investigate these issues and provide records to those who ask. and audit purchases made in-game to identify, rectify and refund players when necessary.

b. Additionally, we would like an audit log added within the game which would allow each player to view all of their materials and/or resources before and after each purchase. That will allow complete transparency to the player and alert your team if something is broken so your team can take corrective action.

4. Introduce new ways to help players without impeding game play.
a. Add a way to protect under capped miners from losing the materials they have mined. Maybe they transwarp a percentage of the mined materials back to their bases on a set frequency.

4

    b. Allow for resource sharing between alliance members including the 2* and 3* common materials.

5. Create better packages within the game that include at least double the resources.
   a. Stop misrepresenting packages and violating consumer rights. This is unethical and false advertising.
   b. Include different price points for these packages.
   c. Resources would include all 2*, 3* materials both common, uncommon and rare in addition to the Parsteel, Tritanium and Dilithium.
   d. Add ship build resources to every pack.


We'd ask that you swiftly address the undertakings we've outlined in the manner that we've suggested. In the meantime, the signatories of this document have pledged to no make any purchases within the game and to continue encouraging other players to do the same as a way of incentivizing a resolution to our common problem. We truly believe this is in the best interest of all parties involved and the long-term survival and prosperity of Star Trek Fleet Command. It is within your power to resolve this situation and we invite you to act with diligence in this manner so that we can all move forward.


Thank you for your time and consideration,

Sincerely,

Jason (Firestorm | USER ID) on behalf of the signatories

c.c. CBS Interactive, Google Play Store, Apple Store, Various Members of the gaming press

Attached: Annex A: Signatories, Annex B: detailed list of issues

5

**Bob Kasolas, Esq. (030492002)**
**Mark E. Critchley, Esq. (014112012)**
**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Attorneys for Plaintiff Vernon
Ackies (Individually and on Behalf
of All Similarly Situated)

| | |
|---|---|
| **VERNON ACKIES (INDIVIDUALL AND ON BEHALF OF ALL SIMILARLY SITUATED),**<br><br>Plaintiff,<br><br>v.<br><br>**SCOPELY, INC.,**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>ESSEX COUNTY: LAW DIVISION<br>DOCKET #: ESX-L-<br><br>Civil Action<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Vernon Ackies ("Plaintiff" or "Ackies"), individually and on behalf of all similarly situated, by way of Class Action Complaint against defendant Scopely, Inc. ("Defendant" or "Scopely"), hereby states as follows:

## NATURE OF THE ACTION

1.      Scopely is the publisher of the online video game "Star Trek Fleet Command." Star Trek Fleet Command ("STFC") is a role-playing video game available on smartphones and other mobile devices. STFC is based on the Star Trek movie franchise in which players explore star systems, build spaceships, complete missions and battle other players. STFC is available on Android and Apple iOS platforms.

2.      STFC is free to play but players can purchase virtual goods in exchange for real-world money to access additional content. This virtual economy allows players to pay real-world money to upgrade and improve their spaceships, space stations and characters, among other things. By spending real money on these "virtual goods," players improve their abilities to defeat other

players and to advance further in the game.

3. However, Scopely fraudulently exploited this virtual economy for its benefit and to the detriment of its players.  Scopely engaged in a fraudulent and deceptive scheme by, *inter alia,* decreasing the value and effectiveness of virtual goods after their purchase by players, misrepresenting the capabilities and benefits of virtual goods, and allowing players to lose virtual goods they paid for through no fault of the player.  Simply stated, Scopely took advantage of, and defrauded, its players through numerous unconscionable commercial practices and fraudulent acts to extract as much money as possible from them.

4. Thus, Ackies brings this action individually and on behalf of all similarly situated individuals seeking compensatory, punitive, actual and treble damages, attorneys' fees and costs, among other relief.

## THE PARTIES AND VENUE

5. Ackies is a citizen of the State of New Jersey with a principal residence of 120 Rutgers Street, Apt. E6, Belleville, New Jersey 07109.

6. Scopely is a Delaware corporation with its principal place of business located at 3530 Hayden Avenue, Culver City, California 90232.

7. Venue is proper in New Jersey because Ackies resides in Essex County, New Jersey, Scopely purposefully directed its activities to New Jersey residents, Scopely directed advertisements for STFC to New Jersey residents, and Scopely accepted real-world payments from New Jersey residents for virtual goods.

## THE FACTS

**A. Background and Gameplay of STFC**

8. STFC is a role-playing mobile video game available on Android and Apple iOS platforms themed after the popular Star Trek movie franchise.  STFC was designed by Digit Game

Studios and was initially released on November 29, 2018. Scopely operates and controls STFC.

9.  STFC is what is commonly referred to as a "massively multiplayer online game" or "MMO." MMOs are videogames that allow a large number of players to participate simultaneously over an internet connection. STFC takes place in a shared, online world that the player can access after installing the game software on their mobile smartphone or tablet. MMOs enable players to cooperate and compete with other players across the world.

10.  In STFC, users play as a space ship captain and start with a small space station and one space ship. Players explore a virtual space system populated with other live individual players. Players advance through STFC by completing various missions and battling other players. As they advance through STFC, players can purchase resources and upgrades with real-world money to improve their abilities within STFC, such as upgraded space stations and space ships.

11.  The description of STFC on the Apple App Store and Android Google Play Store states, "You have the conn! Summon your skills in strategy, combat, diplomacy, and leadership to master the dangerous universe of Star Trek Fleet Command."

12.  The description goes on to state, "Join Millions of players -- forge alliances, defeat your enemies, and build an epic fleet to secure, or dominate, the galaxy. Explore strange new worlds, seek out new life and new civilizations, boldly go where no one has gone before!"

13.  The description advises players to be prepared to do the following:

> -Experience epic conflict in a vast, dynamic galaxy
> -Collect, build, and upgrade iconic ships
> -Take the conn and control ships in star system and galaxy views
> -Encounter famous Star Trek characters in an epic, galaxy-spanning storyline
> -Help locals, fight pirates, or negotiate peace in hundreds of unique missions
> -Recruit famous officers with unique, tactical abilities
> -Ally yourself with Federation, Klingon, or Romulan forces
> -Work with and against thousands of other players in real-time
> -Build, upgrade, and defend your starbase
> -Discover new technologies, ship upgrades, and resources

-Create or join powerful player Alliances to dominate star systems
and become the most powerful players in the galaxy

**B.     The Virtual Economy of STFC**

14.     STFC is free to play.  However, once the player enters STFC, the player can
purchase virtual goods with real-world money to upgrade, improve and enhance their abilities and
standing in STFC in comparison to other players.

15.     These virtual goods purchased with real-world money include, *inter alia*,
"resources," "materials," "character cards," "faction credits," and "ship blueprints."  Players can
also purchase "packs" such as "Master Station Upgrade Pack" and "Ultra Ship Power Pack," which
include various tokens or credits that can be used to upgrade a player's character, space station or
space ship.  The virtual goods range in price going as high as $99.99.

16.     The following screenshots are examples of virtual goods that players can purchase
in STFC to upgrade, improve and enhance their character, space station and space ship, among
other things:



BE:10519530.1/ACK022-276279





BE:10519530.1/ACK022-276279



17.     Purchasing these upgrades with real money helps players increase their power, ability, standing and/or advantages within STFC relative to other players.

18.     Making upgrades to a player's space station and space ship through the purchase of virtual goods is an important function in STFC.  Without making these upgrades, which cost real money, competitive players are unable to advance far in STFC and are easily defeated by other players who have made such purchases and upgrades.

19.     In fact, Scopely makes several representations regarding the importance of upgrading a player's space station and space ship, including: "Collect, build, and upgrade iconic ships," "build an epic fleet to secure, or dominate, the galaxy," "Build, upgrade, and defend your starbase," and "Discover new technologies, ship upgrades, and resources."

20.     Scopely also included the following screenshots in its game preview:

- 6 -





- 7 -



21.     Scopely makes these representations to stress and highlight the importance of upgrades in STFC, which must be purchased with real money.

22.     At the time a player purchases these virtual goods in STFC, there is no disclosure to the player that there is a potential devaluation or elimination of the virtual good at the sole discretion of Scopely.  There is also no disclosure to the player at the time of purchase that the player could lose the value or effectiveness of the virtual good, or the entire virtual good completely.

**C.     Scopely's Fraudulent Conduct and Exploitation of their Virtual Economy**

23.     When STFC was initially released on November 29, 2018, the publishers had represented to the public that STFC had completed its testing or "beta" phase, and was consequently "ready" for release to both free and paying players.

24.     When players decide to become paying players, they reasonably believed: (a) that the software had completed "beta" testing and was in substantially playable form; and (b) that Scopely would make changes to the "rules" of the game in good faith.  Both of these reasonable beliefs turned out to be intentionally and knowingly false.

- 8 -

BE:10519530.1/ACK022-276279

25.     In order to advance through STFC and defeat others, players often and routinely buy virtual goods to upgrade and improve their characters, space stations and space ships. Players reasonably believe that the value, capabilities and effectiveness of these purchased goods would not change. However, Scopely has engaged in fraudulent and deceptive conduct to exploit this virtual economy and players' desire to move further and advance in STFC.

26.     Scopely often intentionally misrepresented the cost of STFC's virtual goods. STFC deducted more resources, materials and/or in-game currencies from a player's in-game balance than the "cost" represented to the player prior to purchase.

27.     In addition, players paid for virtual goods that had stated benefits and capabilities at the time of purchase and on the purchase screen, but once purchased and implemented in STFC, players did not receive the benefits and capabilities they had paid for.

28.     For example, under the rules of STFC, players could acquire or purchase "shields" to protect their "space station" from being attacked by other players. Multiple issues with the software caused the player's shield to be unintentionally and unknowingly deactivated, or in some cases, merely bypassed and ignored by attacking players. As a result, players who had paid for in-game "resources" with real-world money lost the investment and value of what they paid for (and did not receive the value of what they paid for) through no fault of their own, and contrary to their reasonable expectations with respect to the rules and mechanics of STFC.

29.     Scopely also misrepresented the effectiveness and capabilities of virtual goods purchased by players. Players could spend resources, materials and other in-game currencies to "upgrade" various aspects of their space stations, ships and characters. In some instances, players would spend in-game currency to improve the time it would take to repair a ship. For example, if a player purchased an upgrade with real money to reduce a space ship's repair time to ten (10) minutes, the "actual" repair time once a player initiated a repair would be eleven (11) minutes.

- 9 -

This known and uncorrected issue with the software cost players the unnecessary loss of in-game currency paid for with real-world money, resulting in a devaluing of the item purchased by players.

30.     In addition, the software application would either freeze, crash and/or not load certain areas of "space" properly. As a result, when a player would send a "ship" to a specific location where "hostile" ships controlled by the software's artificial intelligence were present, the player's ship would be destroyed. By the time the player was able to access the application, load the application, and have the area of "space" load properly, the player's ship would already be destroyed through no fault of the player, and contrary to the player's reasonable expectations with respect to the rules and mechanics of STFC. This would require the player to unnecessarily spend in game resources and "repair boosts" (more in-game currencies) to repair any ships destroyed through no fault of their own, and contrary to their reasonable expectations with respect to the rules and mechanics of STFC.

31.     The benefits of certain characters and research were also misleading. For example, "Prime" research bonuses were advertised as increasing "damage" by 100% (i.e., doubling damage). Only when certain players began to test the damage output and complain to customer support did Scopely "clarify" that a 100% increase does not actually mean a 100% increase, but a 100% "increase to" a more limited definition or component of the feature being modified (e.g., damage, defense, etc.). Phrased differently, players purchased virtual goods with real-world money but did not receive the in-game benefits they paid for.

32.     In February 2019, following a series of numerous complaints from many players of STFC, Scopely released the first of many "updates" to STFC. The updates purported to correct and/or fix certain aspects of the application's software that was causing issues not reasonably anticipated by the players playing STFC. The updates though, also made substantial changes to the actual "rules" of STFC, which directly affected the in-game economy and cost structure. This

- 10 -

in turn directly affected the value of all prior real money purchases players had made just a few months prior to said updates.

33. The February 2019 update, as well as a series of subsequent updates, substantially changed the rules of STFC and the in-game economy, effectively devaluing all prior purchases made by paying players. This forced players to make substantial additional purchases of virtual goods merely to maintain their pre-update rank in STFC, and was intentionally done by Scopely to force such players to make such real money purchases.

34. Moreover, the cost requirements and progression from one level to the next were substantially different starting from Levels 20-22 (a point in STFC that most free-to-play players did not and could not have reasonably discovered on their own by February 2019). Starting from these levels, the resource and material requirements to upgrade base and ship components exponentially increased - a game progression neither disclosed nor reasonably anticipated by the average player familiar with other similar mobile games.

## CLASS ACTION ALLEGATIONS

35. The state law claims in this Complaint are brought by Ackies under Rule 4:32-1 on behalf of himself and of a class consisting of all similarly situated persons who have been subjected to Scopely's fraudulent and deceptive conduct in STFC.

36. While the precise number of class members is presently unknown to Ackies, upon information and belief, the amount of class members numbers in the hundreds, if not thousands. Therefore, the number of class members is so numerous that joinder of all class members is impracticable.

37. The class members will be readily identifiable from business records in Scopely's possession. The class members will be notified of this class action using the methods of notice that are customarily used in class actions.

- 11 -

38. Ackies' claims are typical of the class members since all class members purchased virtual goods in STFC with real money, but were then subjected to Scopely's fraudulent and deceptive schemes, including but not limited to, a decrease of the value of the virtual goods after their purchase, misrepresentation of the capabilities and benefits of the virtual goods, and loss of the virtual goods after their purchase through no fault of the player.

39. As a result of Scopely's fraudulent and deceptive conduct, the class action mechanism is superior to all other available means for the fair and efficient adjudication of this controversy because:

    (a)    the expense and burden of individual litigations makes it difficult, if not impossible, for individual class members to obtain relief for Scopely's unlawful conduct;

    (b)    the joinder in a single action of all individual class members is impractical; and

    (c)    the damages suffered by each individual class member may be in amounts that make it impractical for each class member to individually pursue a claim.

40. Common questions of law and fact exist as to all class members and predominate over any questions that solely affect individual class members. These common questions of law and fact include:

    (a)    Whether Scopely engaged in a systematic and widespread scheme to decrease the value of virtual goods after their purchase;

    (b)    Whether Scopely engaged in a systematic and widespread scheme to misrepresent the capabilities of virtual goods purchased in STFC;

    (c)    Whether Scopely engaged in a systematic and widespread scheme whereby the player could lose the virtual good after purchase through no fault of the player;

    (d)    Whether Scopely engaged in a systematic and widespread scheme to change the rules of STFC whereby previously purchased virtual goods no longer had the same

- 12 -

value or represented effectiveness;

(e) Whether the fraudulent conduct of Scopely outlined above constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"); and

(f) Whether the fraudulent conduct of Scopely outlined above constitutes an unconscionable commercial practice under the CFA.

41. Ackies will fairly and adequately protect the interests of the class members. Ackies has no interest antagonistic to the interests of the other class members and has retained counsel experienced in handling class action litigations.

42. Scopely's Terms of Service attempt to include a class-action waiver, but such attempted waiver of consumer-fraud class actions is invalid and unconscionable under New Jersey law and violates New Jersey public policy.

43. Scopely's Terms of Service also attempt to include an arbitration provision, but such provision is unenforceable because the CFA is a statutory right and cause of action that is not expressly waived by such arbitration provision by STFC players.

44. Moreover, both the "class action waiver" and arbitration provision in the Terms of Service were fraudulently induced by Scopely, and are therefore unenforceable.

45. Neither the arbitration provision or the "class action waiver" provision in the Terms of Service are applicable to the in-game purchase of virtual goods because such terms are not published, visible or present on the screen at the time such virtual goods are advertised, marketed and/or purchased.

## COUNT ONE

### (Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.)

46. Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

- 13 -

47.    The CFA, specifically N.J.S.A. 56:8-2, provides as follows:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or
> omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale
> or advertisement of any merchandise . . . whether or not any person
> has in fact been misled, deceived or damaged thereby, is declared to
> be an unlawful practice[.]

48.    The CFA defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."

49.    Scopely is a "person" as defined by the CFA and the virtual goods sold by Scopely in STFC constitute "merchandise," as defined by the CFA.

50.    Scopely engaged in various unconscionable commercial practices, deception, fraud, and misrepresentations in violation of the CFA by, *inter alia*, decreasing the value of virtual goods after purchase by the player, misrepresenting the capabilities and benefits of virtual goods before and after purchase, and allowing players to lose virtual goods these players paid for through no fault of their own.

51.    As a result of the unlawful conduct of Scopely described above, Ackies and the class members suffered an ascertainable loss, *i.e.*, the real-world money spent by players in STFC to purchase virtual goods. This entitles Ackies and the class members to treble damages and all attorneys' fees and costs incurred in prosecuting this action.

52.    As a result of Scopely's unlawful conduct, Ackies and the class members have been and will continue to be damaged.

## COUNT TWO

### (Breach of Contract)

53.    Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

- 14 -

54.     By purchasing the virtual goods in STFC with real money, players and Scopely entered into a contract in which the virtual goods would have a certain value and capabilities in STFC in exchange for the payment of real-world money by the player.

55.     Scopely breached that contract by misrepresenting the value and capabilities of the virtual goods, among other things, and by engaging in actions and conduct that allowed for the loss of the virtual goods through no fault of the players.

56.     As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT THREE

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

57.     Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

58.     The covenant of good faith and fair dealing is implied in the contract between all STFC players and Scopely concerning the purchase of virtual goods.

59.     Scopely breached the implied covenant of good faith and fair dealing by altering the value and capabilities of virtual goods in STFC after their purchase by players.

60.     As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT FOUR

### (Conversion)

61.     Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

62.     Ackies and the class members purchased virtual goods from Scopely in STFC. However, Scopely misrepresented the value and capabilities of those virtual goods and decreased

- 15 -

the value of those virtual goods, among other things.

63.     Scopely's actions and conduct constitute the intentional and unauthorized exercise of control and dominion over the monies of Ackies and the class members.

64.     As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT FIVE

### (Unjust Enrichment)

65.     Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

66.     Ackies and the class members purchased virtual goods from Scopely in STFC. However, Scopely misrepresented the value and capabilities of those virtual goods and decreased the value of those virtual goods, among other things.

67.     Scopely's actions and conduct resulted in the unjust enrichment of Scopely at the detrimental expense of Ackies and the class members.

68.     As a result, Ackies and the class members have been and will continue to be damaged.

## COUNT SIX

### (Legal Fraud)

69.     Ackies repeats and re-alleges each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

70.     Scopely made intentional and material misrepresentations and omissions to Ackies to induce him into purchasing virtual goods in STFC. Upon information and belief, Scopely made similar intentional misrepresentations and omissions to the class members to induce them into purchasing virtual goods in STFC.

BE:10519530.1/ACK022-276279

71.     Ackies and the class members reasonably relied upon Scopely's material misrepresentations and omissions to their financial detriment by purchasing the virtual goods in STFC.

72.     As a result, Ackies and the class members have been and will continue to be damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the class members, demands judgment against Scopely granting the following relief:

A.      certifying this action as a class action;

B.      designating plaintiff Vernon Ackies as class representative;

C.      declaring Brach Eichler, LLC as class counsel;

D.      authorizing the issuance of notice at the earliest possible time to all STFC players. This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to participate in this lawsuit;

E.      declaring Scopely in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.;

F.      actual damages, consequential damages and direct damages;

G.      compensatory damages;

H.      treble damages;

I.      punitive damages;

J.      attorneys' fees and costs; and

- 17 -

K.   any other relief the Court deems just and proper.

                                        **BRACH EICHLER LLC**
                                        *Attorneys for Plaintiff Vernon*
                                        *Ackies (Individually and on Behalf*
                                        *of All Similarly Situated)*


                                        _____
                                        Bob Kasolas, Esq.

Dated: September 23, 2019

- 18 -

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Bob Kasolas, Esq. is hereby designated as trial counsel for all triable issues.

> **BRACH EICHLER LLC**
> *Attorneys for Plaintiff Vernon*
> *Ackies (Individually and on Behalf*
> *of All Similarly Situated)*

> _(signature)_

> _____
> Bob Kasolas, Esq.

Dated: September 23, 2019

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

> **BRACH EICHLER LLC**
> *Attorneys for Plaintiff Vernon*
> *Ackies (Individually and on Behalf*
> *of All Similarly Situated)*

> _(signature)_

> _____
> Bob Kasolas, Esq.

Dated: September 23, 2019

- 19 -

BE:10519530.1/ACK022-276279

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy herein is not the subject of any other action pending in any court or of a pending arbitration or other action. I certify that I know of no other parties who should be joined in this lawsuit at this time. I certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

BRACH EICHLER LLC
*Attorneys for Plaintiff Vernon Ackies (Individually and on Behalf of All Similarly Situated)*

_____
Bob Kasolas, Esq.

Dated: September 23, 2019

## CERTIFICATION PURSUANT TO R. 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

BRACH EICHLER LLC
*Attorneys for Plaintiff Vernon Ackies (Individually and on Behalf of All Similarly Situated)*

_____
Bob Kasolas, Esq.

Dated: September 23, 2019

- 20 -

BE:10519530.1/ACK022-276279

# Civil Case Information Statement

**Case Details: ESSEX | Civil Part Docket# L-006946-19**

**Case Caption:** ACKIES VERNON VS SCOPELY, INC.

**Case Initiation Date:** 09/23/2019

**Attorney Name:** HARALAMPO KASOLAS

**Firm Name:** BRACH EICHLER LLC

**Address:** 101 EISENHOWER PKWY

ROSELAND NJ 07068

**Phone:** 9732285700

**Name of Party:** PLAINTIFF : Ackies, Vernon

**Name of Defendant's Primary Insurance Company (if known):** None

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES      **Title 59?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/23/2019
Dated

/s/ HARALAMPO KASOLAS
Signed