# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **VERNON ACKIES (INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED),** | Civil Action No. 19-19247 (CCC)(MF) |
| *Plaintiff,* | Hon. Claire C. Cecchi, U.S.D.J. |
| v. | Return Date: February 18, 2020 |
| **SCOPELY, INC.,** | *Oral Argument Requested* |
| *Defendant.* | *Document Electronically Filed* |

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS

_____

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey  07068-1067
Telephone:  (973) 228-5700
*Attorneys for Plaintiff Vernon Ackies*
*(Individually and on Behalf of All Similarly Situated)*

Of Counsel:
    Bob Kasolas, Esq

On the Brief:
    Bob Kasolas, Esq.
    Eric Magnelli, Esq.
    Mark E. Critchley, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................3

      A.     Scopely's Fraudulent and Deceptive Business Practices and Plaintiff's Class Action Complaint ..............................................3

      B.     Procedural History ....................................................................7

      C.     Scopely's Alleged Terms of Service ........................................8

LEGAL ARGUMENT ......................................................................................9

   I.      PLAINTIFF'S COMPLAINT SHOULD NOT BE COMPELLED TO ARBITRATION ..................................................................9

      A.     New Jersey Law Applies ........................................................10

      B.     Statutory Rights Are Not Expressly Waived In The Terms And Are Explicitly Carved Out Of The Terms........................11

      C.     The Arbitration Provisions Are Not Clearly And Unmistakably Established........................................................15

      D.     Scopely's Terms Were Fraudulently Induced ..........................19

      E.     The Terms Are Unconscionable And Constitute A Contract Of Adhesion .........................................................20

      F.     Players Are Not Provided Notice Of The Terms' Arbitration Provisions................................................................22

      G.     The Terms' Provision Regarding Threshold Arbitrability Questions Is Unenforceable ....................................24

  II.     PLAINTIFF'S COMPLAINT CAN PROCEED AS A CLASS ACTION................................................................................28

  III.    PLAINTIFF HAS STATED A CLAIM ON ALL SIX CAUSES OF ACTION ..............................................................30

i

A.     Plaintiff Has Pled All Of The Elements Of A CFA Claim.......31

B.     Plaintiff Has Sufficiently Pled A Breach Of Contract Claim...34

C.     Plaintiff Has Stated A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.............................35

D.     Plaintiff Has Stated A Claim For Conversion .........................36

E.     Plaintiff Has Stated A Claim For Unjust Enrichment .............37

F.     Plaintiff Has Sufficiently Pled A Claim Of Legal Fraud..........38

G.     The Amended Complaint Satisfies the Heightened Pleading Standard of Rule 9(b)..................................................................39

CONCLUSION .......................................................................................40

BE:10769537.1/ACK022-276279

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

Ackerman v. Ackerman,
   44 <u>N.J.L.</u> 173...................................................................................................19

Alamo Rent-A-Car v. Galarza,
   306 <u>N.J. Super.</u> 392 (1997)...........................................................................13

Ashcroft v. Iqbal,
   556 <u>U.S.</u> 662 (2009)......................................................................................30

AT&T Mobility LLC v. Concepcion,
   563 <u>U.S.</u> 333 (2011)................................................................................28, 29

Atalese v. U.S. Legal Servs. Grp., L.P.,
   219 <u>N.J.</u> 430 (2014) ...............................................................................passim

Banco Popular N. Am. v. Gandi,
   184 <u>N.J.</u> 161 (2005) ......................................................................................38

Bell Atlantic Corp. v. Twombly,
   550 <u>U.S.</u> 544 (2007)......................................................................................30

Bosland v. Warnock Dodge, Inc.,
   197 <u>N.J.</u> 543 (2009) ...............................................................................passim

Boyes v. Greenwich Boat Works, Inc.,
   27 <u>F.Supp.2d</u> 543 (D.N.J. 1998)..................................................................10

Cox v. Sears Roebuck & Co.,
   138 <u>N.J.</u> 2 (1994) ..........................................................................................32

Deerhurst Estates v. Meadow Homes, Inc.,
   64 <u>N.J. Super.</u> 134 (App. Div. 1960)...........................................................19

Doctor's Assocs., Inc. v. Casarotto,
   517 <u>U.S.</u> 681 (1996)........................................................................................9

BE:10769537.1/ACK022-276279

EnviroFinance Grp., LLC v. Envtl. Barrier Co.,
LLC, 440 N.J. Super. 325 (App. Div. 2015) .........................................................34

Fenwick v. Kay Am. Jeep, Inc.,
72 N.J. 372 (1977) ..................................................................................................31

First Options of Chic, Inc. v. Kaplan,
514 U.S. 938 (1995).................................................................................................25

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009) ...................................................................................30

Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,
168 N.J. 124 (2001) ...........................................................................................12, 13

Gras v. Assoc. First Capital,
346 N.J. Super. 42 (2001)...................................................................................12, 13

Grasser v. United Health Care Corp.,
343 N.J. Super. 241 (App. Div. 2001).....................................................................13

Hedges v. United States,
404 F.3d 744 (3d Cir. 2005) ...................................................................................30

Instructional Sys., Inc. v. Computer Curriculum Corp.,
130 N.J. 324 (1992) .................................................................................................10

Jewish Center of Sussex County v. Wale,
86 N.J. 619 (1981) ...................................................................................................20

Kirleis v. Dickie, McCamey & Chilcote, P.C.,
560 F.3d 156 (3d Cir. 2009) .....................................................................................9

LaPlace v. Briere,
404 N.J. Super. 585 (App. Div. 2009).....................................................................36

Lemelledo v. Beneficial Mgmt. Corp. of Am.,
150 N.J. 255 (1997) .................................................................................................31

Mango v. Pierce-Coombs,
370 N.J. Super. 239 (App. Div. 2004).....................................................................32

BE:10769537.1/ACK022-276279

Morgan v. Sanford Brown Inst.,
   225 N.J. 289 (2016) ...........................................................................25, 26

Muhammad v. County Bank of Rehoboth Beach, Delaware,
   189 N.J. 1 (2006) ...........................................................................29

New Jersey Citizen Action v. Schering-Plough Corp.,
   367 N.J. Super. 8 (App. Div. 2003) ...................................................33

Nolan v. Lee Ho,
   120 N.J. 465 (1990) ...........................................................................19

Quigley v. KPMG Peat Marwick,
   330 N.J. Super. 252 (App. Div. 2000) ...............................................13

Rockel v. Cherry Hill Dodge,
   368 N.J. Super. 577 (App. Div. 2004) ...............................................23

Schiff v. Schiff,
   116 N.J. Super. 546 (App. Div. 1971) ...............................................19

Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,
   742 F.2d 786 (3d Cir. 1984) .............................................................39

Sitogum Holdings, Inc. v. Ropes,
   352 N.J. Super. 555 (Ch. Div. 2002) ...........................................20, 21

Sons of Thunder, Inc. v. Borden, Inc.,
   148 N.J. 396 (1997) ...........................................................................35

Stelluti v. Casapenn Enterprises, LLC,
   203 N.J. 286 (2010) ...........................................................................21

Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC,
   417 F.Supp.2d 632 (D.N.J. 2006) ....................................................39

Tatis v. Allied Interstate, LLC,
   882 F.3d 422 (3d Cir. 2018) .............................................................30

Volt Information Sciences, Inc. v. Board of Trustees of Leland
   Stanford Junior Univ., 489 U.S. 468 (1989)...................................9, 23

v

VRG Corp. v. GKN Realty Corp.,
135 <u>N.J.</u> 539 (1994) ....................................................................37

**Statutes**

<u>N.J.S.A.</u> 56:8-2....................................................................................32

<u>N.J.S.A.</u> 56:8-19..................................................................12, 17, 28, 31

<u>N.J.S.A.</u> 56:8-1 <u>et</u> <u>seq</u>. ...................................................................1

**Other Authorities**

Rule 9(b)................................................................................2, 34, 39, 40

Rule 12(b)(6) ............................................................................2, 30, 34

BE:10769537.1/ACK022-276279

## PRELIMINARY STATEMENT

While there is a Federal and State public policy favoring arbitration of disputes, that public policy is certainly not without limits.  Any waiver of time-honored rights under New Jersey law to bring litigation in a judicial forum must be clear and unambiguous.  Moreover, a waiver of statutory rights must also be clearly and unmistakably established in an arbitration agreement.  Lastly, parties cannot be required to arbitrate claims when they have not agreed to do so.

In this matter, Plaintiff Vernon Ackies ("Plaintiff" or "Ackies") has brought a class action on behalf of all similarly situated to halt the fraudulent and deceptive business practices committed by defendant Scopely, Inc. ("Defendant" or "Scopely") in its online video game "Star Trek Fleet Command" ("STFC"). Through the class action complaint, Plaintiff, on behalf of all similarly situated individuals, seeks damages and injunctive relief to prevent additional harm to STFC players, among other relief.

Through this motion, Scopely now moves to compel Plaintiff's claims to arbitration, and/or in the alternative to dismiss them entirely.  However, Scopely's arguments are meritless and its reliance on ambiguous arbitration provisions is misplaced.  As discussed below, statutory rights such as Plaintiff's New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*, claims are not expressly waived in the arbitration clause, but to the contrary are actually explicitly and

1

unambiguously **carved out** of the arbitration clause. Further, the arbitration provisions are ambiguous, contradictory, include non-mandatory language and violate the public policy of the CFA and New Jersey law by forcing consumers to contact Scopely before initiating any court action or arbitration.  The arbitration provisions relied upon by Scopely also fail to clearly and unambiguously advise STFC players they are relinquishing their time-honored right to sue by playing STFC.  Lastly, the class action waiver provision violates New Jersey public policy since CFA plaintiffs cannot be compelled to waive a class action claim since such provisions violate New Jersey public policy.  Thus, the arbitration provisions are unenforceable and Plaintiff's claims cannot be compelled to arbitration.

Additionally, Plaintiff has sufficiently stated a claim on all six causes of action alleged against Scopely.  The Amended Complaint delves into significant detail regarding the rampant fraudulent and deceptive conduct undertaken by Scopely to fleece STFC players of the real-world money spent by them in the game.  The Amended Complaint also satisfies the pleading standards of Rules 12(b)(6) and 9(b). Thus, Scopely's motion to dismiss must be denied.

As discussed below, Scopely's motion must be denied it its entirety and Plaintiff's class action claims allowed to proceed to put an end to Scopely's fraudulent conduct.

BE:10769537.1/ACK022-276279

## <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

Plaintiff incorporates the facts alleged in its Amended Complaint as if fully set forth herein.  Below, Plaintiff identifies facts most relevant to this motion.

**A.**   **Scopely's Fraudulent and Deceptive Business Practices and Plaintiff's Class Action Complaint**

**i.**   **Gameplay of STFC and its Virtual Economy**

Scopely is the publisher of STFC, which is a role-playing video game based on the Star Trek movie franchise.  The video game is available on smartphones and other mobile devices.  STFC is free to play but players can purchase virtual goods in exchange for real-world money to access additional content and digital goods. *See* Amended Complaint, ¶¶1-2.

This virtual economy allows players to pay real-world money to upgrade and improve their virtual space ships, space stations and characters, among other things. By spending real-world money on these "virtual goods," players improve and strengthen their abilities to defeat other players and to advance further in the game. *Id.* at ¶¶2, 9-10.  Making upgrades to a player's space station and space ship through the purchase of virtual goods is an important function in STFC.  Without making these upgrades, which cost real money, competitive players are unable to meaningfully advance far in STFC, and are consequently easily defeated by other players who have made such purchases and upgrades.  *Id.* at ¶18.

3

At the time a player purchases these virtual goods in STFC, there is absolutely no disclosure to the player that there is a potential devaluation and/or elimination of the virtual good at the sole discretion of Scopely.  There is also no disclosure to the player at the time of purchase that the player could lose the value or effectiveness of the virtual good, or the entire virtual good completely.  *Id.* at ¶22.

### ii.    Scopely's Fraudulent Conduct and Exploitation of its Virtual Economy

Scopely has fraudulently and deceptively exploited STFC's virtual economy for its own financial benefit.  Scopely systematically and intentionally misrepresents the cost of STFC's virtual goods.  STFC deducts more in-game currencies from a player's in-game balance than the "cost" represented to the player prior to in-game purchase.  In addition, players paid for virtual goods that had expressly stated benefits and capabilities at the time of purchase and on the purchase screen, but once purchased and implemented in STFC, those players did not receive the benefits and capabilities they had paid for with real-world money.  *Id.* at ¶¶26-27.

A February 2019 update substantially changed the rules of STFC, effectively devaluing tens of millions of dollars of all prior purchases made by paying players. This forced players to make substantial additional purchases of virtual goods merely to maintain their pre-update rank in STFC, and was intentionally done by Scopely to force such players to make such real-world money purchases while defrauding those players as to the players' original purchases.  *Id.* at ¶33.

4

Scopely has also engaged in deceptive and fraudulent conduct concerning in-game "shields" used by players to protect their space ships and space stations. *Id.* at ¶35. In STFC, players purchase various virtual goods with real-world money for their space ships and space stations, but can lose those goods if their space ship or space station is attacked by other players. To deter that scenario, players are able to use shields that will protect the space ship or space station for a specific period of time (e.g., one hour, two hours, etc.). If a shield is up, the space ship or space station is protected from attack and the player cannot lose any virtual goods. *Id.* at ¶36.

However, STFC's shields routinely expire prior to the end of the designated and advertised time period through no fault of the player. For example, a STFC player will purchase and put up a shield on their space station to last for four (4) hours. Nevertheless, the shield will deceptively drop prior to the four (4) hour deadline through no fault of the player. Since no shield is up, other players can attack the space station and take many of the virtual goods purchased for the space station. Through no fault of the player, the player who put up the shield has lost many of the virtual goods he or she purchased with real-world money, and consequently such player loses the digital investment for that money. *Id.* at ¶37.

Additionally, players are able to receive push notifications to their mobile device if they are not in the game while their space ship and/or space station is being attacked. There is a grace period allowing the player to enter the game and put up a

5

shield before they lose any virtual goods.  However, the push notification comes hours after the space ship or space station is attacked.  Consequently, the player is too late to enter the game and to protect their space ship or space station by putting up a shield.  With their shield down, the player is attacked by other players and loses virtual goods purchased with real-world money, through no fault of their own. Players consequently rely on an advertised game function to protect their virtual goods purchased, but are then left with no recourse by Scopely when the function does not work as represented.  *Id.* at ¶39.

Scopely has been undeniably aware of all these problems and has done nothing to correct them.  Scopely is either intentionally orchestrating and implementing these issues so that players lose virtual goods and are then forced to buy more virtual goods, or sitting idly by and allowing the issues to persist so players purchase more virtual goods with real money.  In either scenario, Scopely is intentionally taking advantage of STFC players and milking as much money as possible from the players to fill their own coffers. *Id.* at ¶40.

### iii.   Scopely's Refusal to Issue Refunds or to Respond to Player Complaints

Scopely makes it difficult for STFC players to file complaints.  If a player loses a virtual good through no fault of their own and makes a complaint, Scopely will initially respond to the player's complaint but will then stop responding to the player in bad faith. *Id.* at ¶42.

6

Scopely also does not issue refunds to players.  Refunds are not issued even if the virtual good was lost through no fault of the player (e.g., a player's shield is set to stay up for four (4) hours but drops after two (2) hours, and the player's base is consequently attacked and virtual goods are taken by other players), or if a virtual good does not operate as represented (e.g., a "pack" failing to contain an item represented to be included in the pack).  *Id.* at ¶43.

For players who are able to obtain refunds directly from Apple, Scopely has deceptively and without legal basis deducted the player's in-game currencies by the amount received in the refund.  *Id.* at ¶44.  Scopely has also strategically banned players from STFC who discussed refunds with other players and/or helped other players obtain refunds.  *Id.* at ¶45.

## B.   Procedural History

On September 23, 2019, Ackies filed the Complaint, on behalf of all similarly situated, against Scopely, in the Superior Court of New Jersey, Docket No. ESX-L-6946-19.  On October 7, 2019, Ackies filed his First Amended Class Action Complaint against Scopely (hereinafter, the "Amended Complaint").  In the Amended Complaint, Ackies alleges six (6) causes of action against Scopely:  (1) violation of the CFA; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) conversion; (5) unjust enrichment; and (6) legal fraud.  On October 23, 2019, this matter was removed to this Court. On November

13, 2019, Scopely filed its motion to compel individual arbitration, or, in the alternative, to dismiss the Amended Complaint (the "Scopely Motion").

## C.   Scopely's Alleged Terms of Service

In the Scopely Motion, Scopely exclusively relies on its Terms of Service (the "Terms") to argue that Plaintiff's claims must be resolved through mandatory arbitration.  *See* Certification of Glenn McGuire, Exhibit 3.  However, the Terms include arbitration provisions that are ambiguous, inconsistent and unenforceable under New Jersey law.  For example, the Terms include the following provisions:

- "IMPORTANT NOTICE:  For U.S. and Canadian players, disputes with Scopely **must generally be resolved** on an individual basis through final and binding arbitration."  *See* Section 1 of the Terms (emphasis added).

- "If your issue remains unresolved after you've exhausted our informal dispute resolution system above, you **may** seek to resolve it through binding arbitration."  *See* Section 9 of the Terms (emphasis added).

Most importantly, the Terms expressly and unambiguously allow consumers to enforce their statutory rights, specifically stating, "**In particular, nothing in these Terms will affect the statutory right of any consumer** . . . ."  *See* Section 8 of the Terms (emphasis added).

Accordingly, as discussed below, the arbitration provisions relied upon by Scopely are unenforceable and do not form a basis to compel individual arbitration of any of Plaintiff's claims against Scopely.

BE:10769537.1/ACK022-276279

## LEGAL ARGUMENT

## I.   PLAINTIFF'S COMPLAINT SHOULD NOT BE COMPELLED TO ARBITRATION

Section 2 of the Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract**." 9 U.S.C. § 2 (emphasis added).  Arbitration is a matter of contract and requires courts to enforce arbitration agreements according to their terms.  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Additionally, "generally applicable contract defenses such as fraud, duress and/or unconscionability may be applied to invalidate arbitration agreements without contravening § 2."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

To determine the validity of an arbitration agreement, courts apply "'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  An agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442 (2014).  Parties are not required "to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478.

9

As discussed below, there is no valid arbitration agreement between Plaintiff and Scopely and thus none of Plaintiff's claims can be compelled to arbitration.

## A.    New Jersey Law Applies

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992).  New Jersey courts follow the standard in the *Restatement (Second) of Conflicts of Laws* § 187 (1969) (Restatement), which provides that the law of the state chosen by the parties will apply, unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties. Id.

In this instance, New Jersey law applies because Plaintiff has alleged CFA claims against Scopely and New Jersey consequently has a strong interest in protecting its citizens from consumer fraud.  In contrast, applying California law would frustrate New Jersey's strong public policy to protect consumers.  New Jersey has made the CFA one of the toughest consumer fraud laws in the nation.  *See Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543, 547 (D.N.J. 1998)(" Courts have

BE:10769537.1/ACK022-276279

declared that the Consumer Fraud Act should be construed liberally in favor of protecting consumers. Plainly, the act is broadly designed to protect the public.").

Moreover, in *Pet Gifts, USA, LLC v. Imagine This Company, LLC*, this court applied New Jersey law to a CFA claim and stated:

> New Jersey has a greater interest in the litigation of Plaintiff's consumer fraud claim. First the interests of interstate comity favor applying the law of the individual claimant's own state, because applying any other state's laws would frustrate the domiciliary state's legislative policies.
>
> . . . .
>
> Finally and most importantly, the interest of New Jersey in having its law apply to its own consumers outweighs the interests of Virginia in protecting out-of-state consumers from consumer fraud.  No. CV143884FLWDEA, 2015 WL 5822584, at *7 (D.N.J. Oct. 2, 2015) (citations and quotation marks omitted).

Thus, the Terms must be construed under New Jersey law to adequately protect New Jersey consumers as intended by the New Jersey legislature.

## B.   Statutory Rights Are Not Expressly Waived In The Terms And Are Explicitly Carved Out Of The Terms

New Jersey law requires that statutory rights and claims must be expressly waived in favor of arbitration.  In the case at hand though, nothing in the Terms even remotely demonstrates or evidences that STFC players waived any statutory rights the player has under the CFA to assert such statutory claims in court as opposed to arbitration.  Thus, Plaintiff's CFA claim is not subject to arbitration.

11

First and foremost, statutory rights are explicitly and clearly carved out of the Terms.  The Terms state, "In particular, **nothing** in these Terms will affect the **statutory right** of any consumer . . . ."  *See* Section 8 of the Terms.  Meanwhile, Plaintiff's Amended Complaint includes a claim under the CFA, which is a statutory right.  Therefore, any attempt by Scopely to argue that CFA claims are somehow included in the arbitration provisions is contradicted by this clear language in Section 8 of the Terms.  The CFA, specifically N.J.S.A. 56:8-19, authorizes individual court actions for consumers who have been defrauded and suffered an ascertainable loss.  Accordingly, Plaintiff's CFA claim is not included in the arbitration provisions of the Terms and cannot be compelled to arbitration.

Additionally, the Terms' arbitration provisions do not satisfy the "specificity of waiver" standard articulated by New Jersey courts necessary to find a litigant has agreed to arbitrate statutory claims and/or waived the right to pursue such claims in court.  "Waiver of statutory rights provisions in arbitration agreements must be clear and explicit." *Gras v. Assoc. First Capital*, 346 N.J. Super. 42, 54 (2001).  "[A] party's waiver of statutory rights must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be ready expansively." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 132 (2001) (citation and internal quotation marks omitted).

12

Importantly, the Appellate Division has rejected statutory waiver provisions in arbitration agreements/clauses where such provisions merely state that a litigant waives "any claims." *Alamo Rent-A-Car v. Galarza*, 306 N.J. Super. 392-94 (1997). This is known as the "specificity of waiver rule." New Jersey courts will always construe ambiguous arbitration clauses against the drafting party where they are not clear and explicit. *Quigley v. KPMG Peat Marwick,* 330 N.J. Super. 252, 271 (App. Div. 2000). The "any claim" language in arbitration clauses has been deemed by the Appellate Division as insufficient to constitute a waiver of statutory claims under NJLAD. *See Garfinkel*, 168 N.J. at 127; *Quigley*, 330 N.J. Super. 252 at 132-36. Arbitration clauses intending to do so must do so "in unambiguous terms." *Gras*, 346 N.J. Super. at 56. Building on *Garfinkle*, *Alamo* and *Quigley*, the Appellate Division in *Grasser v. United Health Care Corp.*, 343 N.J. Super. 241, 250 (App. Div. 2001), held that an arbitration clause not containing a reference to the "waiver of all statutory claims" or arbitration of "NJLAD claims" or federal equivalents was not clear and unambiguous enough to constitute the waiver of the plaintiff's statutory right to bring NJLAD claims in court.

The issue of "specificity of waiver" in the context of consumer contracts and statutory legal rights was also directly addressed by the New Jersey Supreme Court in *Atalese v. United States Legal Services Group, L.P.*, 219 N.J. 430, 437-39 (2014). In *Atalese*, the Supreme Court invalidated an arbitration clause in a consumer

13

contract on the grounds that it did not "clearly and unambiguously" inform the consumer that, in deciding to arbitrate its dispute, it was waiving its right to a jury trial.   In *Atalese*, a customer of defendant's debt consolidation service filed a civil complaint under the CFA, *inter alia*, alleging that defendant misrepresented its license status and the amount of money that went to actually paying attorneys to handle her case.  *Id.* The trial court granted defendant's motion to compel plaintiff to arbitrate her dispute pursuant to a clause in the parties' contract.  *Id.* at 447-48.

Examining the level of notice required in consumer arbitration clauses, the Supreme Court concluded that an arbitration clause in a consumer contract must provide "clear and unambiguous" notice to consumers of their rights to a jury trial, and that in electing to undergo arbitration, they are deciding to waive those rights. *Id.* at 444-45.  The Court's decision was based on two (2) predominant reasons. First, the Court reasoned that arbitration was essentially a waiver of rights that, in order to be effective, "requires a party to have full knowledge of his legal rights and intent to surrender those rights." *Id.* at 442.   Second, the Court recognized a countervailing policy implicit in the state legislature's enactment of the CFA that favored consumers seeking relief though courts of law.  *Id.* at 443-45 (citing N.J.S.A. 56:8-19).  In sum, the Court held the arbitration clause in the consumer contract was unenforceable because it did not provide adequate notice of legal rights for a valid

statutory waiver to exist, and because state policy favored resolving consumer claims through the courts.

Based on the foregoing authority, the extremely vague and non-specific language included in the Terms' arbitration provisions do not clearly and unambiguously waive statutory rights.  To the contrary, the Terms expressly include a provision that statutory rights are **not** affected by the Terms.  Moreover, the arbitration provisions do not explicitly identify that any statutory rights are included. In fact, the arbitration provision's wording that it applies to "all kinds of claims" contradicts the earlier statement that statutory rights are not affected.  Since, the waiver of a consumer's statutory right to bring a CFA court action is not clearly and unambiguously established in the Terms, Plaintiff's CFA claims are not subject to arbitration.

## C.   The Arbitration Provisions Are Not Clearly And Unmistakably Established

The Terms' arbitration provisions are also unenforceable since they are not clearly and unmistakably established.  The arbitration provisions are ambiguous, contradictory and violate the public policy of the CFA.  As a result, Plaintiff's claims, including the common law claims, cannot be compelled to arbitration.

An agreement to arbitrate, like any other contract, "must be the product of mutual assent[.]"  *Atalese*, 219 N.J. at 442 (citation and internal quotation marks omitted).  "Mutual assent requires that the parties have an understanding of the terms

to which they have agreed.  An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." *Id.* (citation and internal quotation marks omitted).  A waiver of the time-honored right to sue "must be clearly unmistakably established." *Id.* at 444 (quoting *Garfinkel*, 168 N.J. at 132). Moreover, consumer contracts in New Jersey must "be written in a simple, clear, understandable and easily readable way." *Id.* at 444 (quoting N.J.S.A. 56:12–2). Arbitration clauses must be "phrased in plain language that is understandable to the reasonable consumer." *Id.* at 444.

In the instant matter, the Terms are contradictory and include permissive language, not language mandating arbitration.  Section 1 of the Terms states the following:  "IMPORTANT NOTICE:  For U.S. and Canadian players, disputes with Scopely **must generally be resolved** on an individual basis through final and binding arbitration."  This statement contradicts Scopely's argument that arbitration is somehow mandatory.

Moreover, Section 9 of the Terms allegedly requires players to go through a "Informal Dispute Resolution" process before initiating any arbitration or court proceeding.  This process involves contacting Scopely directly.  However, this requirement violates New Jersey's clear public policy regarding the CFA as stated in *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009).  *Bosland* concluded that the "CFA does not require a consumer, who has been victimized by a practice which

16

the statute is designed to remedy, to seek a refund from the offending merchant as a prerequisite to filing a complaint." 197 N.J. at 547-48. The *Bosland* court reached that conclusion because the CFA makes "no demand upon [a] plaintiff to try to obtain a refund first as a pre-condition of instituting suit." Id. at 557-58 (citing N.J.S.A. 56:8-19). Further, the Terms explicitly state that they do not affect the statutory rights of any consumer. Tellingly, N.J.S.A. 56:8-19 permits consumers to file their own private rights of action against offending merchants, and does not require consumers to contact the offending merchant prior to filing suit. Scopely's requirement of an "Informal Dispute Resolution" therefore contradicts N.J.S.A. 56:8-19 and is not permitted.

Additionally, compelling consumers to contact the offending merchant – as Scopely attempts to impose on its players – violates the broad remedial purpose of the CFA. *See Bosland*, 197 N.J. at 561. Requiring a consumer to contact the offending merchant would create a safe harbor for the offending merchant as the merchant can engage in fraudulent conduct, and only provide a remedy to those consumers who are alert enough to complain to the merchant. *Id.* Forcing consumers to contact the offending merchant, i.e. Scopely, allows the merchant to engage in additional fraudulent and deceptive business practices. Such requirement violates the purpose of the CFA and should not be enforced by this Court.

Lastly, Section 9 of the Terms states, "If your issue remains unresolved after you've exhausted our informal dispute resolution system above, you **may** seek to resolve it through binding arbitration." *See* Section 9 of the Terms. (emphasis added). This permissive language does not clearly and unmistakably establish that a consumer is waiving their time-honored right to sue, regardless of whether such claims are statutory or based on common law. The ambiguity is compounded by the fact that the informal dispute process is unenforceable as described above. Thus, as consumers are not obligated to contact Scopely first, consumers arguably have the option to pursue arbitration or court action. Either way, the arbitration provisions are not clearly and unmistakably established as required by *Atalese*. Consumer contracts are subjected to higher scrutiny and must be written in a simple, clear and understandable way. *Atalese*, 219 <u>N.J.</u> at 444. Scopely's inclusion of permissive language, such as "may" and "must generally be resolved" create ambiguity and are insufficient to properly advise consumers of their alleged waiver of litigation rights. Because of this permissive and ambiguous language, there is no mutual assent mandating arbitration of any of Plaintiff's six causes of action.

Thus, the Terms' arbitration provisions are unenforceable and none of Plaintiff's claims can be compelled to arbitration.

BE:10769537.1/ACK022-276279

**D.      Scopely's Terms Were Fraudulently Induced**

The Terms are also void and unenforceable because they were fraudulently induced by Scopely.  As detailed in the Amended Complaint, Scopely fraudulently induces players into playing STFC by misrepresenting the effectiveness and capabilities of virtual goods purchased with real money in the game, among other things.  As a result of these fraudulent actions, the Terms' arbitration provisions are unenforceable as to all of Plaintiff's claims.

New Jersey courts have consistently recognized for well over one hundred years that "fraud vitiates every transaction infected by it." *Ackerman v. Ackerman*, 44 N.J.L. 173, 15 Vroom 173 (E&A 1882). In *Ackerman*, plaintiff was able to have a satisfaction of judgment vacated on the ground that it was obtained by way of fraud. According to the plaintiff, the defendant had falsely represented that he was without substantial assets and on that basis, he wrongfully received the satisfaction of an over $4000.00 judgment for $50.00.  Since then, it is basic and longstanding precedent that if a contract was "procured by fraud or falsehood[,]" it is unenforceable.  *Schiff v. Schiff*, 116 N.J. Super. 546, 561 (App. Div. 1971); *Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (recognizing that an entire contract induced by fraud is deemed invalid and unenforceable under the law).

A contract is fraudulently induced when a knowing misstatement has been made on the basis of which the defrauded party signs the contract instrument. *See*

*Deerhurst Estates v. Meadow Homes, Inc.*, 64 <u>N.J. Super.</u> 134, 144 (App. Div. 1960). In order to prove fraud in the inducement of a contract, the plaintiff must demonstrate: (1) a material misrepresentation of a presently existing or past fact; (2) reasonable reliance on the misrepresentation by the plaintiff; and (3) resulting damages. *See Jewish Center of Sussex County v. Wale*, 86 <u>N.J.</u> 619 (1981).

Scopely fraudulently induces its players to play the game by making fraudulent representations as to the characteristics and capabilities of virtual goods purchased with real-world money in STFC. Scopely made these statements knowing them to be fraudulent. Scopely engaged in a fraudulent and deceptive scheme by, *inter alia*, decreasing the value and effectiveness of virtual goods after their purchase by players, misrepresenting the capabilities and benefits of virtual goods before purchase, and by allowing and engineering players to lose virtual goods they paid for through no fault of the player. Scopely took advantage of and defrauded its players to extract as much money as possible from them. As a result of these fraudulent actions, the Terms are void, and therefore none of Plaintiff's claims can be compelled to arbitration.

## E.   The Terms Are Unconscionable And Constitute A Contract Of Adhesion

Besides containing unclear and ambiguous arbitration provisions, the Terms are also unconscionable and constitute a contract of adhesion. The Terms' arbitration provisions are therefore unenforceable. In determining whether a

contract is unconscionable, courts have focused on two factors: "(1) unfairness in the formation of the contract; and (2) excessively disproportionate terms." *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002). "The first factor—procedural unconscionability—can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* "The second factor—substantive unconscionability—simply suggests the exchange of obligations so one-sided as to shock the court's conscience." *Id.*

A contract of adhesion is defined as one "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate." *Rudbart*, 127 N.J. at 353 (citations omitted). In determining whether a contract of adhesion is unconscionable and unenforceable, courts consider, "using a sliding scale analysis, the way in which the contract was formed and, further, whether enforcement of the contract implicates matters of public interest." *Stelluti v. Casapenn Enterprises, LLC*, 203 N.J. 286, 301 (2010).

The Terms are unconscionable since they are presented on a "take-it-or-leave-it" basis and violate the public policy of the CFA. Specifically, the Terms are presented on a take-it-or-leave-it basis, and players are only allegedly given notice of the Terms on the initial loading screen for a split second. Players though are not provided notice of the Terms at any other time during the gameplay, or in particular

prior to any purchase of any virtual goods.  In other words, the Terms are not presented to players when the player purchases a virtual good, nor are the Terms made available prior to downloading the game.  The Terms are also not present on the screen depicting the virtual goods or the capabilities and benefits of the digital goods in the game.

Also, as stated above, the Terms' requirement that players contact Scopely before initiating any arbitration or court action violates the CFA's public policy articulated in *Bosland*.  197 N.J. at 547-48, 561  Requiring players to contact Scopely before initiating an action only subjects the player to further fraudulent conduct and misrepresentations.  Moreover, the arbitration provisions are not sufficiently clear to notify players that they are foregoing their time-honored right to sue by playing STFC, in violation of the state's public interest as stated in *Atalese*.  219 N.J. at 442-44.  The Terms consequently are an unconscionable contract of adhesion and violate the public interest.  Thus, the arbitration provisions are unenforceable and none of Plaintiff's claims can be compelled to arbitration.

## F.   Players Are Not Provided Notice Of The Terms' Arbitration Provisions

Scopely baselessly argues that Plaintiff confirmed his agreement to the Terms through his gameplay.  Scopely also relies on alleged statements made by STFC players in an online chatroom independent from STFC and Scopely.  However, Scopely's arguments are meritless because players are simply not provided sufficient

notice of the Terms.  Even if STFC players were provided notice of the Terms, the alleged notice is irrelevant because the arbitration provisions are unenforceable and exclude statutory claims as described above.

As Scopely itself argues, the only time STFC players are allegedly provided notice of the Terms is during the game's loading screen.  The loading screen does not invite players to read the Terms or mandate that they read the Terms before playing.  The Terms are not available when a player downloads the game to their mobile device, or when in-game purchases are made.  Scopely also does not require that players confirm their consent to the Terms prior to playing.  The Terms are available on Scopely's website, which is separate and distinct from the STFC game. Further, the Terms are not available when a player makes an in-game purchase of a virtual good.   Thus, Plaintiff and the class members were not provided with sufficient notice to argue they were aware of and assented to the Terms.  *See Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577, 586 (App. Div. 2004)(finding that in order to be bound to arbitration provisions, a party must have had "reasonable notice" of the contractual terms).

Regardless, the accessibility of the Terms does not impact the arguments above that the arbitration provisions are unenforceable and expressly exclude statutory rights.  Arbitration agreements are the product of mutual assents and parties are not required to arbitrate issues that they have not contractually agreed to do so.

23

*Atalese*, 219 N.J. at 430; *Volt*, 489 U.S. 478.  As stated above, statutory rights, such as Plaintiff's CFA claims, are expressly excluded from the Terms.  Moreover, the arbitration provisions do not clearly and unambiguously inform players they are waiving their statutory rights.

There is also no meeting of the minds that the Terms' arbitration provisions are actually mandatory.  On its very face, the arbitration provisions fail to clearly and unmistakably state that a player is foregoing his or her time-honored right to sue by playing STFC, whether such claims are statutory or common law based.  The arbitration provisions include **permissive** language and the requirement that players contact Scopely before initiating arbitration or a court proceeding, which violates the CFA's public policy.  Plaintiff's alleged notice of the Terms does not change the fact that statutory claims are unaffected by the Terms and that the arbitration provisions are ambiguous.  Regardless of notice, a party cannot agree to ambiguous terms.  Since the arbitration provisions are not clearly and unmistakably established, none of Plaintiff's six claims are subject to mandatory arbitration.

Thus, Scopely's arguments that Plaintiff assented to the Terms by continuing to play STFC are inapplicable and should be disregarded by the Court.

## G.    The Terms' Provision Regarding Threshold Arbitrability Questions Is Unenforceable

Scopely argues that the Terms delegate questions of arbitrability to the arbitrator.  Scopely relies on a sentence buried in Section 9 of the Terms, which

BE:10769537.1/ACK022-276279

states as follows:  "If we have a dispute about whether this agreement to arbitrate can be enforced or applies to our dispute, we all agree that the arbitrator will decide that too, rather than a court or other agency." *See* Section 9 of the Terms.  However, as stated above, there is no valid arbitration agreement between the Parties and statutory claims are expressly excluded from the Terms.  Moreover, the Parties did not clearly and unmistakably agree to arbitrate the issue of arbitrability.  Thus,  any question of arbitrability must be decided by the Courts.

New Jersey law determines who decides the arbitrability of Plaintiff's claims. When deciding whether the parties agreed to arbitrate arbitrability, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.  Courts should conclude the parties agreed to arbitrate arbitrability only if there is "clear and unmistakable evidence" that they did so.  *Id.* Moreover, before sending a dispute to an arbitrator, the court must first determine whether a valid arbitration agreement even exists.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.C.t. 524, 530 (2019)(citing 9 U.S.C. §2).

"An agreement to delegate arbitrability to an arbitrator, like an arbitration agreement itself, must satisfy the elements necessary for the formation of a contract under state law." *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 295 (2016) (citing *First Options*, 514 U.S. at 944). "Unless the parties have clearly delegated to an arbitrator the decision whether the parties agreed to arbitration, the issue is for a

25

court to resolve." *Morgan*, 225 <u>N.J.</u> at 295–96 (citation omitted). "[T]o overcome the judicial-resolution presumption, there must be "clea[r] and unmistakabl[e] evidence that the parties agreed to arbitrate arbitrability." *Morgan*, 225 <u>N.J.</u> at 304 (quotations omitted). If there is an ambiguity as to the delegation of the arbitrability determination, the court decides the issue. *Id.*

In the instant matter, there is no valid and/or enforceable arbitration agreement between Plaintiff and Scopely as described above. Statutory claims, such as the CFA claim alleged by Plaintiff, are explicitly carved out of the arbitration agreement and are not expressly waived. The Terms state, "In particular, nothing in these Terms will affect the statutory right of any consumer . . . ." *See* Section 8 of the Terms. Thus, there is no question of arbitrability regarding the CFA claim.

Also, the vague and non-specific language included in the Terms' arbitration provisions do not clearly and unambiguously waive statutory rights or properly mandate arbitration for any claim. Additionally, the arbitration provisions include permissive language and violate the public policy of the CFA by requiring players to contact Scopely before bringing any action. Moreover, the arbitration agreement was also fraudulently induced and therefore unenforceable. As discussed above, there is no valid arbitration agreement. Therefore, there is no question of whether this dispute falls within an arbitration agreement.

BE:10769537.1/ACK022-276279

Even if there was a valid arbitration agreement, the delegation of questions of arbitrability to an arbitrator is not clear and unmistakable as required by the controlling case law. The provision relied upon by Scopely is buried in Section 9 and is not separately set apart to properly notify players. The clause is also ambiguous and appears to only apply once claims are actually brought in arbitration. The provision states, "we all agree that the arbitrator will decide that **too**[.]" *See* Section 9 of the Terms (emphasis added). By including this language, the Terms are stating that questions of arbitrability will only be heard by the existing arbitrator. Logically, this language is stating that if an arbitration is ongoing, that arbitrator will hear questions of arbitrability. At a minimum, this provision is ambiguous and unenforceable.

The arbitration provisions are ambiguous and include permissive language, including "you may seek to resolve it through binding arbitration." *See* Section 9 of the Terms. These provisions are contradictory and do not clearly and unmistakably advise players that questions of arbitrability will be decided by the arbitrator or that player are contractually obligated to arbitrate any type of claim – whether statutory or common law. The provision cited by Scopely is therefore insufficient to overcome the judicial presumption that questions of arbitrability are to be decided by the Courts.

Thus, contrary to Scopely's arguments, any threshold questions of arbitrability are for this Court and not an arbitrator.

## II.  PLAINTIFF'S COMPLAINT CAN PROCEED AS A CLASS ACTION

Scopely argues that the Terms "include a class action waiver requiring arbitration of all of Plaintiff's claims on an individual basis only." *See* Scopely's brief at p. 28.  However, because Plaintiff's claims are not subject to arbitration as outlined above, the Terms' alleged class arbitration waiver is inapplicable.  Thus, Plaintiff's claims can proceed as a class action.

The alleged class action waiver in the Terms only applies to arbitrable claims. As noted above, Section 8 of the Terms states, "In particular, **nothing in these Terms will affect the statutory right of any consumer** . . . ."  The Terms are therefore inapplicable to Plaintiff's statutory rights to bring an action pursuant to the CFA.  *See* N.J.S.A. 56:8-19.  Thus, Plaintiff can bring a class action for violations of the CFA.  Moreover, the arbitration provisions are not clearly and unmistakably established to waive Plaintiff's right to sue in Court on any type of claim, especially given the heightened standard for consumer contracts in *Atalese*.  For these reasons and the reasons stated above, Plaintiff's claims are not subject to arbitration and thus any class arbitration waiver is inapplicable.  The Terms' alleged class arbitration waiver is only applicable to claims that are subject to arbitration.  Here, none of Plaintiff's claims are subject to arbitration.

The cases relied upon by Scopely only pertain to scenarios where claims are being sent to arbitration.  In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the U.S. Supreme Court held that class action waiver provisions governed by the FAA preempts courts from nullifying class waiver provisions in arbitration agreements based upon state law notions of unconscionability or public policy, and that federal law trumps state law in those instances.  Plaintiff's claims though are simply not subject to arbitration.  Consequently, the holding in *Concepcion* is inapplicable.  In other words, permitting Plaintiff's claims to proceed as a class action does not violate *Concepcion* or the FAA because they are not subject to arbitration.  Since the alleged class arbitration waiver in the Terms only pertains to arbitration, it therefore has no bearing on Plaintiff's claims which are not subject to arbitration.  Since the class arbitration waiver is inapplicable, Plaintiff's claims can proceed as a class action.

Further, there are public policy concerns that support Plaintiff's claims being brought as a class action.  Class actions provide relief to consumers who have a small amount of damages, notify many consumer-fraud victims that they have been wronged, and encourage competent counsel to take up consumer-fraud class actions that would otherwise be ignored because of the small amount of individual damages.  *See Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 16-18, 28 (2006) for an analysis of the public interest favoring class action.

Lastly, the alleged class arbitration waiver is unconscionable and unenforceable for the reasons set forth in Section I.E., *supra*. Plaintiff hereby incorporates those arguments from Section I.E. by reference.

For these reasons, the alleged class action waiver provision is inapplicable and unenforceable, and all of Plaintiff's claims can proceed as a class action.

## III.   PLAINTIFF HAS STATED A CLAIM ON ALL SIX CAUSES OF ACTION

Fed.R.Civ.P. 12(b)(6) provides that a complaint will be dismissed only if it fails to state a claim upon which relief can be granted. The court must accept the complaint's allegations as true and draw reasonable inferences in a light most favorable to the non-moving party. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). Here, Scopely has the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The factual allegations in a complaint must be sufficient to raise a right to relief above a speculative level, so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility, however, does not impose a "probability" requirement at the pleading stage of a case. *Iqbal*, 556 at 678. The complaint need only show that the plaintiff is entitled to relief through the facts alleged. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

BE:10769537.1/ACK022-276279

## A.   Plaintiff Has Pled All Of The Elements Of A CFA Claim

Contrary to Scopely's arguments, Plaintiff has sufficiently pled a claim of violation of the CFA.  In the Amended Complaint, Plaintiff alleges that Scopely engaged in numerous unconscionable commercial practices, misrepresentations and deception, among other unlawful actions.  Moreover, Plaintiff alleges that players, including Plaintiff, have suffered an ascertainable loss as a result of the fraudulent conduct of Scopely, i.e., their real-world money spent on virtual goods in STFC. Thus, Plaintiff has pled all of the elements of a CFA claim.

The purpose of the CFA "was to prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." *Fenwick v. Kay Am. Jeep, Inc.*, 72 <u>N.J.</u> 372, 376–77 (1977).  The CFA "evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 <u>N.J.</u> 255, 264 (1997).

Under the CFA, specifically <u>N.J.S.A.</u> 56:8-19, consumers can bring private rights of action.  In analyzing CFA claims, there are three elements required for the prima facie proofs:  "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland*, 197 <u>N.J.</u> at 557.

31

The required unlawful conduct[1] includes unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentations, which are prohibited by the CFA, specifically N.J.S.A. 56:8-2.  When the alleged consumer-fraud violation consists of an affirmative act instead of a knowing omission, "intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17–18 (1994).  An unconscionable commercial practice is an "amorphous concept obviously designed to establish a broad business ethic.  The standard of conduct that the term unconscionable implies is lack of good faith, honesty in fact and observance of fair dealing." *Id.* at 18 (citation and internal quotation marks omitted).   An affirmative misrepresentation is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 251, (App. Div. 2004)(citation and internal quotation marks omitted).

Regarding ascertainable loss, "it means that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 197 N.J. at 558.  An ascertainable loss is "quantifiable or measurable." *Id.*  "The

---

[1] The required unlawful conduct is categorized into three categories:  affirmative acts, claims asserting knowing omissions, and claims based on regulatory violations. *Bosland*, 197 N.J. at 556.  The Amended Complaint only alleges affirmative acts.

CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" *Id.* at 559.  Lastly, a plaintiff must plead a "causal nexus between the alleged act of consumer fraud and the damages sustained." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 <u>N.J. Super.</u> 8, 15 (App. Div. 2003).

The Amended Complaint satisfies all of the elements of a CFA claim.  In significant detail, Plaintiff alleges that Scopely engaged in numerous unconscionable commercial practices, deception, fraud and misrepresentations in violation of the CFA, including, decreasing the value of virtual goods after purchase by the player, misrepresenting the capabilities and benefits of virtual goods before and after purchase, and allowing players to lose virtual goods these players paid for through no fault of their own. *See* Amended Complaint at ¶¶23-50.  The fraudulent actions committed by Scopely satisfy the definitions of unconscionable commercial practices and misrepresentations, which are defined above.

Additionally, the Amended Complaint alleges that Plaintiff and other players suffered an ascertainable loss, specifically the real-world money spent on virtual goods that was then defrauded from them.  Players spent real-world money on virtual goods that were lost through no fault of the player, decreased in value through no fault of the player, or failed to include capabilities and characteristics represented by Scopely.  The loss suffered by Plaintiff and other STFC players is ascertainable

33

because the real-world money spent by STFC players is quantifiable as required by *Bosland*. 197 N.J. at 558.  Further, the Amended Complaint alleges the requisite causal nexus between Scopely's unlawful conduct and the ascertainable loss suffered by Plaintiff and other STFC players.

Thus, Plaintiff has pled all the elements of a CFA claim and met the pleading standard of Rule 12(b)(6).  Further, as discussed below, Plaintiff has also satisfied the heightened pleading requirements for fraud as required by Rule 9(b).

## B.     Plaintiff Has Sufficiently Pled A Breach Of Contract Claim

Plaintiff has sufficiently pled all of the elements of a breach of contract claim against Scopely.  "To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained damages." *EnviroFinance Grp., LLC v. Envtl. Barrier Co*., LLC, 440 <u>N.J. Super.</u> 325, 345 (App. Div. 2015).

As alleged in the Amended Complaint, by purchasing virtual goods in STFC with real-world money, players and Scopely entered into a contract in which the virtual goods would have a certain value and capabilities in exchange for the payment of real-world money by the player.  Scopely breached that contract by misrepresenting the value and capabilities of the virtual goods, decreasing the value and effectiveness of virtual goods after their purchase by players, and allowing

34

and/or engineering players to lose virtual goods they paid for through no fault of the player.  Plaintiff and other players were thereby damaged as a result of Scopely's actions by losing virtual goods they had purchased with real-world money, spending money on virtual goods that failed to have the capabilities represented to them by Scopely, and/or having the value of the virtual good decrease through no fault of the player, among other things.  Thus, Plaintiff has pled all of the elements of a breach of contract claim.

## C.   Plaintiff Has Stated A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Plaintiff has sufficiently pled a claim for breach of the implied covenant of good faith and fair dealing.  Every contract in New Jersey "contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997).  In every contract, "there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Id.* (citation and internal quotation marks omitted).

As alleged in the Complaint, Scopely breached the implied covenant of good faith and fair dealing by altering the value and capabilities of virtual goods in STFC after their purchase by players.  Scopely engaged in actions that affected and destroyed the rights of players to receive the fruits of the contract.  Namely, Scopely decreased the value of virtual goods after their purchase by players and allowed

players to lose virtual goods through no fault of the player, among other things. Thus, Scopely breached the implied covenant of good faith and fair dealing.

## D.   Plaintiff Has Stated A Claim For Conversion

Plaintiff has also stated a claim for conversion. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. Conversion is an intentional tort in that the defendant must have intended to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *LaPlace v. Briere*, 404 <u>N.J. Super.</u> 585, 595 (App. Div. 2009)(citation and internal quotation marks omitted).

As alleged in the Amended Complaint, Plaintiff and the class members purchased virtual goods from Scopely in STFC. However, Plaintiff and the class members lost the entire virtual good or the value of the virtual good was decreased through no fault of the player. For example, Plaintiff and other STFC lost virtual goods purchased with real-world money when their shield dropped prior to the end of Scopely's advertised and designated time period, and the space station was consequently attacked by other players. Through no fault of the player, the player who put up the shield lost many of the virtual goods he or she purchased with real-world money, and thus lost the monetary value of their purchase. This is just one of the many actions taken by Scopely in which Scopely intentionally exercised control

36

and dominion over the monies of Plaintiff and the class members.  Thus, Plaintiff has stated a claim for conversion.

### E.   Plaintiff Has Stated A Claim For Unjust Enrichment

Plaintiff has also stated a claim for unjust enrichment against Scopely.  "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).

In the instant matter, Plaintiff and the class members purchased virtual goods from Scopely in STFC with real-world money.  However, Plaintiff and the class members either lost the entire virtual good or the value of the good was significantly decreased as a result of the actions of Scopely but through no fault of the player.  For example, Plaintiff and the class members purchased virtual goods, such as characters, weapons and space ships, that did not perform as represented by Scopely. Moreover, Plaintiff and the class members lost virtual goods when their shield dropped and they were attacked by other players.  Through these fraudulent actions, Scopely retained the monies paid by players but the players did not receive the benefit they had intended to purchase.  It would be unjust to allow Scopely to retain

the monies paid to them by players who eventually lost the virtual good entirely or the value of the virtual good decreased solely at the hands of Scopely.  Thus, Plaintiff has stated a claim for unjust enrichment.

## F.    Plaintiff Has Sufficiently Pled A Claim Of Legal Fraud

Plaintiff has pled all of the elements of a legal fraud claim against Scopely. The elements of common-law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (internal quotation marks omitted).   The Amended Complaint meets all the elements of a legal fraud claim.

As alleged in the Amended Complaint, Scopely made intentional and material misrepresentations and omissions to Plaintiff and the class members to induce them into purchasing virtual goods in STFC.  For example, Scopely misrepresented the effectiveness and capabilities of virtual goods purchased by players, such as space stations, ships and characters (e.g., misrepresenting the amount of damage a space ship or character could cause, misrepresenting the amount of time a repair bonus will take to repair a space ship, etc.).  Moreover, Scopely misrepresented to players that their space station shield will stay up for a specified period of time, when in fact it

would drop before the specified time period ended allowing other players to attack the space station and take virtual goods purchased by the player.

Further, Plaintiff and the class members reasonably relied upon Scopely's material misrepresentations and omissions to their financial detriment by purchasing the virtual goods in STFC. Plaintiff and the class members were damaged by purchasing virtual goods with real-world money and then losing the virtual good entirely or having the value of the virtual good decrease through the actions of Scopely and through no fault of the player. Thus, Plaintiff pled all the elements of a legal fraud claim against Scopely.

**G.     The Amended Complaint Satisfies the Heightened Pleading Standard of Rule 9(b)**

Fed.R.Civ.P. 9(b) requires a party to plead "with particularity the circumstances constituting fraud or mistake." A plaintiff need not plead or allege the "date, place or time of each alleged misrepresentation or each alleged fraudulent act performed … ." *Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC*, 417 F.Supp.2d 632, 644 (D.N.J. 2006)). Rule 9(b) "requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged[.]" *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

As demonstrated above and in the Amended Complaint, Plaintiff sufficiently pled the CFA and legal fraud claims to place Scopely on notice of the misconduct

with which they are charged to satisfy the standard of Rule 9(b).  The Amended Complaint includes numerous examples of Scopely's fraudulent and deceptive conduct.  *See* paragraphs 23-50 of the Amended Complaint.  These examples include misrepresenting the effectiveness and capabilities of virtual goods, misrepresenting the costs of virtual goods, devaluing all virtual goods purchased prior to the February 2019 update, manipulation of a player's space station shield and refusing to issue refunds, among other fraudulent acts.  *Id.*

Rule 9(b) does not require Plaintiff to allege the date, place or time of each alleged misrepresentation or fraudulent act.  Such would be impractical given that thousands of players play STFC and there are numerous virtual goods offered for purchase in STFC.  The Amended Complaint is pled with enough particularity to place Scopely on notice of the misconduct of which they are charged.  Thus, the Amended Complaint satisfies the heightened pleading standard of Rule 9(b).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Scopely's motion to compel arbitration or, in the alternative, to dismiss, in its entirety.

**BRACH EICHLER LLC**

By:   /s/ Bob Kasolas, Esq.
         Bob Kasolas, Esq.
         Eric Magnelli, Esq.
Dated: January 10, 2020              Mark E. Critchley, Esq.

40