NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VERNON ACKIES, *Individually and on Behalf of All Similarly Situated*,<br><br>　　　　　　　Plaintiff,<br>　v.<br>SCOPELY, INC.,<br>　　　　　　　Defendant. | Civil Action No.: 19-cv-19247<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

  This matter comes before the Court on the motion of Defendant Scopely, Inc. ("Defendant" or "Scopely") to compel individual arbitration or, in the alternative, to dismiss Plaintiff Vernon Ackies' ("Plaintiff") First Amended Class Action Complaint (ECF No. 1-1, "FAC"), pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 10. Plaintiff filed an opposition. ECF No. 21. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is denied without prejudice and the parties are ordered to conduct limited discovery on the issue of arbitrability.

**I.    BACKGROUND**

  This dispute arises out of an online video game called Star Trek Fleet Command ("STFC"), which was released on November 29, 2018. ECF No. 1-1 ¶¶ 1, 8. Defendant Scopely operates and controls STFC. Id. ¶ 8. STFC is a role-playing game based on the Star Trek movie franchise. Id. ¶ 1. In STFC, users take on the role of a spaceship captain and begin with a small space station and one spaceship. Id. ¶ 10. Players then advance in STFC by completing missions and battling other players. Id. Although STFC is free to use, players have the option to purchase virtual goods using real-world currency. Id. ¶¶ 2, 10. These virtual goods allow players to upgrade aspects of their gameplay and improve their chances of advancing in the game. Id. ¶¶ 2, 10. Plaintiff asserts,

however, that Scopely exploited STFC's virtual economy by fraudulently inducing players to purchase upgrades, and then decreasing the value and effectiveness of the virtual goods to the detriment of STFC players. Id. ¶¶ 3, 25–40.

The Court notes that the FAC contains few factual allegations about Plaintiff Vernon Ackies' individual experience. Although the FAC describes the purported impact of Defendant's conduct on the *general population* of STFC players (see, e.g., ECF No. 1-1 ¶¶ 3, 25–29, 35, 40), it does not provide details about Plaintiff's use of STFC, or explain what, if any, in-app purchases he made and whether those goods decreased in value. Nonetheless, drawing all reasonable inferences in Plaintiff's favor, the Court assumes for the purposes of this motion that Plaintiff intended, by filing the FAC, to allege that he, like other STFC players, was harmed by Defendant's purported deceptive and fraudulent business practices. The Court further notes that Defendant contends that according to its records, Plaintiff downloaded and played STFC on November 29, 2018, the day it launched. ECF No. 10-1 at 8. Specifically, time stamps show that Plaintiff installed STFC at 22:13:04 UTC (Coordinated Universal Time) and that at 22:13:07 UTC Plaintiff was presented with notice of Scopely's Terms of Service ("TOS") (the "Terms Notice"), which stated that continuing to play the game constituted agreement to the TOS. Id. Finally, at 22:18:05 UTC, Plaintiff played the STFC game, by which, Defendant argues, Plaintiff manifested his assent to Scopely's TOS. Id. Defendant further asserts that its records show that Plaintiff made extensive in-game purchases of virtual goods, for example in March 2019 Plaintiff made purchases on 20 out of 31 days. Id. at 10. Defendant argues that Plaintiff then continued this frequent gameplay and purchasing through at least November 5, 2019, meaning that he played STFC every day leading up to the filing of the complaint on September 23, 3019, and then played 31 days, and spent nearly $150, after he filed the complaint. Id. at 10.

Scopely's TOS govern the relationship between Scopely and users who play its video games, including STFC.[1] Importantly, the TOS contain the follow arbitration agreement and class action waiver. ECF No. 10-2 at 23–24.

> **Arbitration Agreement**
> If your issue remains unresolved after you've exhausted our informal dispute resolution system above, you may seek to resolve it through binding arbitration as follows:
>
> If you are a resident of the US or Canada, you and Scopely agree to resolve any dispute arising out of or related to these Terms or our Services on an individual basis through final and binding arbitration, provided you have exhausted the dispute resolution steps above and the dispute remains unresolved. This agreement will preclude you from bringing any class action against Scopely. This agreement applies to all kinds of claims under any legal theory, except those described in the Exceptions to Agreement to Arbitrate subsection. It also applies even after you stop using your Account or have deleted it.
>
> An arbitration proceeding proceeds before a neutral arbitrator instead of a judge and jury, so we both agree to give up our right to a trial before a judge or jury. Arbitration proceedings have different rules than lawsuits in court. Arbitration is less formal, and provides limited opportunity to compel the other side to share information relevant to the dispute—a process called discovery. The arbitrator can award the same damages and relief on an individual basis that a court can award to an individual. But, if you or we do not like the arbitrator's decision, the courts only have a limited ability to change the outcome of arbitration or make the arbitrator reconsider his or her decision. If we have a dispute about whether this agreement to arbitrate can be enforced or applies to our dispute, we all agree that the arbitrator will decide that too, rather than a court or other agency. Unless you and Scopely otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding.
>
> **No Class Actions**
> We all agree that we can only bring claims against each other on an individual basis. That means:
> - Neither you nor Scopely can bring a claim as a plaintiff or class member in a class, collective, consolidated, or representative action.

---

[1] On a motion to compel arbitration, the Court may consider "the face of a complaint, and documents relied upon in the complaint." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted). Here, the FAC does not rely on the TOS for any of its claims and does not attach the TOS. *See* ECF No. 1. It does, however, mention the TOS in order to argue that the arbitration agreement and class action waiver contained therein are unenforceable. *See* id. ¶¶ 58–59. Accordingly, the Court includes the relevant text of the TOS only to demonstrate the provisions in dispute between the parties.

- The arbitrator cannot combine more than one person's claim into a single case, and cannot preside over any class, collective, consolidated, or representative arbitration proceeding (unless we both agree to change this).
- The arbitrator's decision or award in one person's case can only impact the person who brought the claim, not other individuals, and cannot be used to decide other disputes with other users.

On September 23, 2019, Plaintiff filed a Class Action Complaint in the Superior Court of New Jersey, Essex County Law Division. ECF No. 1-1 at 35. Thereafter, Plaintiff filed a First Amended Class Action Complaint ("FAC") on October 7, 2019. Id. at 5. In the FAC, Plaintiff alleges that Scopely exploited STFC's virtual economy and fraudulently decreased the value and effectiveness of the virtual goods. Id. ¶ 3. As a result, Plaintiff brings this action on behalf of himself and others similarly situated, for damages and to enjoin "Scopely's deceptive and fraudulent business practices to prevent harm to additional consumers, among other relief." Id. ¶ 4. The FAC brings six causes of action against Defendant for: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) conversion; (5) unjust enrichment; and (6) legal fraud. Id. ¶¶ 62–88. Defendant timely removed the action to this Court on October 23, 2019, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1446, and 1453. ECF No. 1.

Defendant then filed the instant motion seeking to compel Plaintiff to individual arbitration, or in the alternative, to dismiss the FAC with prejudice for failure to state a claim under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 10. In its motion, Defendant argues that this dispute must be compelled to arbitration as Plaintiff assented to Scopely's TOS, including the arbitration agreement and class action waiver, by playing STFC initially, and by continuing to play STFC even after the onset of this litigation. ECF No. 10-1 at 1. Defendant also

argues, in the alternative, that the FAC must be dismissed as it contains no allegations about Plaintiff and therefore fails to satisfy even basic pleading standards. Id. at 2.

Plaintiff filed an opposition which objects to arbitration and dismissal. ECF No. 21. Plaintiff argues that he cannot be compelled to arbitration as Scopely's arbitration agreement is ambiguous, contradictory, and in violation of public policy, and is therefore unenforceable against him. Id. at 2. He further asserts that the FAC can proceed as a class action because his claims are not subject to arbitration under the TOS and because the class action waiver is unconscionable. Id. Finally, Plaintiff maintains that he has sufficiently stated a claim to causes of action in the FAC. Id. Defendant filed a reply (ECF 22), and Plaintiff filed a sur-reply (ECF No. 25), with leave of Court (ECF No. 24).

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4). Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted).

In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

### III.   DISCUSSION

In determining whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . . .'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted); *see also MZM Construction Co., Inc. v. N.J. Building Laborers Statewide Benefits Fund*, Nos. 18-3791 & 19-3102, 2020 WL 5509703, at *14 (3d Cir. Sept. 14, 2020).

Conversely, the Rule 56 standard will apply "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (citations omitted); *see Noonan v. Comcast Corp*, No. 16-458, 2017 WL 4799795, at *4 (D.N.J. Oct. 24, 2017) ("[Thus,] a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record."). Accordingly, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." *Ross v. CACH, LLC*, No. 14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015); *see also Guidotti*, 716 F.3d at

774–76 ("Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. . . . Under either of those scenarios, a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate."). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under [the Rule 56] summary judgment standard." *Guidotti*, 716 F.3d at 776.

Here, although the FAC mentions the TOS, the arbitration provision, and the class-action waiver, it does so only so far as to argue that the arbitration agreement and waiver are unenforceable and that Plaintiff's claims fall outside the scope of thse provisions. *See* ECF No. 1-1 ¶¶ 58–61. Moreover, the FAC does not attach the TOS, and importantly, none of Plaintiff's claims arise under the TOS. *See generally* id. Instead, the TOS is substantively cited for the first time in Defendant's motion. Accordingly, the question of arbitrability cannot be resolved without considering the TOS, which is evidence extraneous to the pleadings, and thus it would be inappropriate to apply the Rule 12(b)(6) in deciding this motion. *See Guidotti*, 716 F.3d at 774.

As the Third Circuit has explained, a "motion to compel arbitration must be denied pending further development of the factual record," in scenarios such as this one. *Id.*; *see, e.g.*, *Torres*, 2018 WL 5669175, at *2 (denying motion to compel arbitration where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate).

Accordingly, the Court will deny Defendant's motion without prejudice and will order the parties to conduct limited discovery on the issue of arbitrability. Thereafter, Defendant may file a renewed motion to compel arbitration, which the Court will review under the Rule 56 standard.[2]

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to compel arbitration must be denied pending further factual development of the record.

Accordingly, **IT IS** on this 28th day of September, 2020:

**ORDERED** that Defendant's motion to compel arbitration (ECF No. 10) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the parties shall conduct limited expedited discovery on the issue of arbitrability.

**SO ORDERED.**

**CLAIRE C. CECCHI, U.S.D.J.**

---

[2] As the Court is ordering limited discovery on the issue of arbitrability, it will defer ruling on the other arguments raised in Defendant's motion until after deciding whether the arbitration provision contained in the TOS is enforceable.