NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VERNON ACKIES, *Individually and on Behalf of All Similarly Situated*,<br><br>　　　　　　　Plaintiff,<br>　　v.<br>SCOPELY, INC.,<br>　　　　　　　Defendant. | Civil Action No.: 19-cv-19247<br><br>**OPINION** |

**CECCHI, District Judge.**

　　This matter comes before the Court on the motion of Defendant Scopely, Inc. ("Defendant") to compel individual arbitration or, in the alternative, to dismiss Plaintiff Vernon Ackies's ("Plaintiff") First Amended Class Action Complaint (ECF No. 1-1), pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 38 ("Moving Br."). Plaintiff filed an opposition (ECF No. 40 ("Opp.")), and Defendant replied (ECF No. 41 ("Repl.")). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is granted.

**I.　　BACKGROUND**

　　The instant action arises out of a dispute over the enforceability of the Terms of Service ("TOS") for an online video game called Star Trek Fleet Command ("STFC"). ECF No. 1-1. STFC is controlled and operated by Defendant, and the game was released to the public on November 29, 2018. *Id.* at ¶¶ 1, 8. STFC is available for download on smartphones and other mobile devices, including on Android and Apple iOS platforms. *Id.* at ¶ 1.

　　STFC is based on the Star Trek movie franchise. *Id.* In the game, players assume the role of a spaceship captain, and advance through the game by completing missions and battling other players. *Id.* at ¶ 10. While STFC is free to play, players may, using actual currency, purchase

various upgrades to enhance their ability to succeed in the game. *Id.* at ¶¶ 2, 10. Plaintiff alleges that Defendant fraudulently induces players to purchase these upgrades by representing that the upgrades would improve a player's position in the game. However, Defendant would later decrease the value and effectiveness of these upgrades to the detriment of STFC players. *Id.* ¶¶ 25–30.

Plaintiff downloaded STFC to his mobile device on November 29, 2018 at approximately 6:13 p.m. Eastern Standard Time. ECF Nos. 38-11 (Def. Statement of Undisputed Facts) at ¶ 3, 40-1 (Pl. Response) at ¶ 3. Upon downloading the game, STFC presented Defendant with an initial loading screen which contained the following notice: "By continuing to play, you agree to our Terms of Service. . . ." ECF No. 38-11 at ¶ 4.  Defendant's TOS govern the relationship between Defendant and users who play its games, including STFC. *Id.* at ¶ 8. Importantly, the TOS contain the following relevant portions of an arbitration agreement:

> IMPORTANT NOTICE: For U.S. and Canadian players, disputes with Scopely must generally be resolved on an individual basis through final and binding arbitration.
> . . . .
>
> If your issue remains unresolved after you've exhausted our informal dispute resolution System . . . you may seek to resolve it through binding arbitration as follows:
>
> If you are a resident of the US or Canada, you and Scopely agree to resolve any dispute arising out of or related to these Terms or our Services on an individual basis through final and binding arbitration, provided you have exhausted the dispute resolution steps above and the dispute remains unresolved. This agreement will preclude you from bringing any class action against Scopely. This agreement applies to all kinds of claims under any legal theory, except those described in the Exceptions to Agreement to Arbitrate subsection. It also applies even after you stop using your Account or have deleted it.
>
> An arbitration proceeding proceeds before a neutral arbitrator instead of a judge and jury, so we both agree to give up our right to a trial before a judge or jury. Arbitration proceedings have different rules than lawsuits in court. Arbitration is less formal, and provides limited opportunity to compel the other side to share information relevant to the dispute—a process called discovery. The arbitrator can award the same damages and relief on an individual basis that a court can award to

> an individual. But, if you or we do not like the arbitrator's decision, the courts only have a limited ability to change the outcome of arbitration or make the arbitrator reconsider his or her decision. If we have a dispute about whether this agreement to arbitrate can be enforced or applies to our dispute, we all agree that the arbitrator will decide that too, rather than a court or other agency.
> . . . .
>
> We all agree that we each still have the right to go to court to resolve disputes relating to:
> • Your or Scopely's intellectual property (for example, trademarks, trade dress, domain names, trade secrets, copyrights or patents); or
> • Claims that are not subject to arbitration as a matter of applicable law not preempted by federal law, and that are within the jurisdiction of the court where they're brought.
> . . . .
>
> The American Arbitration Association ("AAA") will run the arbitration between you and Scopely, in accordance with the AAA's rules and procedures then in effect (including their Supplementary Procedures for Consumer-Related Disputes, if applicable) ("AAA Rules"), except as modified here. If something in these Terms is different than the AAA Rules, then we will follow these Terms instead.

ECF No. 10-2, Exhibit 3 ("Arb. Agr.").

After being presented with this notice, Plaintiff began to play STFC. ECF Nos. 38-11 at ¶ 5, 40-1 at ¶ 5. However, he states that he did not see the notice regarding Defendant's TOS on the initial launch page, and he also has not seen the notice at any point while playing the game. ECF No. 40-2 ("Depo. Tr.") at 35–37. In March and April 2019, Plaintiff met with lawyers before filing this action, during which time they made Plaintiff aware of Defendant's TOS, including the arbitration provision. ECF Nos. 38-11 at ¶ 19, 40-1 at ¶ 19; ECF No. 10-3 ("Apple Cert."), Exhibit 11A. While Plaintiff became aware of the terms, he did not read them for himself and has never read them since. ECF Nos. 38-11 at ¶ 21, 40-1 at ¶¶ 21–25. After learning that the TOS existed and subsequently filing his Complaint, Plaintiff has continued to play STFC and make in-game purchases, without reading the TOS. ECF No. 40-1 (Pl. Counterstatement of Undisputed Facts) at ¶¶ 15–16.

On October 7, 2019, Plaintiff filed a First Amended Class Action Complaint alleging claims for: 1) violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*; 2) breach of contract; 3) breach of the implied covenant of good faith and fair dealing; 4) conversion; 5) unjust enrichment; and 6) legal fraud. ECF No. 1-1 at ¶¶ 62-88. Defendant then timely removed the action to this Court on October 23, 2019, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1446, and 1453. ECF No. 1-1. Thereafter, Defendant filed a motion to compel individual arbitration, or in the alternative, to dismiss the First Amended Class Action Complaint with prejudice for failure to state a claim under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 10. This Court dismissed the motion without prejudice because the TOS and arbitration agreement were first substantively referenced in Defendant's briefing, and ordered Defendant to file a renewed motion upon completion of initial discovery on the issue of arbitrability. ECF No. 26.

After conducting limited discovery, on June 25, 2021, Defendant filed its renewed motion to compel arbitration or, in the alternative, to dismiss for failure to state a claim, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). ECF No. 38. Plaintiff opposed the motion (ECF No. 40), on July 19, 2021, and Defendant replied (ECF No. 41).

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4).  Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a

4

matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-cv-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

Before reaching the question of whether it should compel arbitration, the Court must first decide whether to apply the Rule 12(b)(6) or Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). In its September 28, 2020 Opinion dismissing Defendant's first motion to compel arbitration (ECF No. 26), the Court determined that after the parties conducted limited discovery it would review any renewed motion to compel arbitration pursuant to Rule 56.[1] *Id.* at 8. Under such a summary judgement standard, the Court should compel arbitration when there is no material issue of fact that "a valid agreement to arbitrate exists" and "the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). In considering whether a material issue of fact exists, the Court must "consider all evidence provided by the party opposing arbitration and draw all reasonable inferences in that party's favor." *Bey v. Citi Health Card, N.A.*, No. 15-cv-6533, 2017 WL 2880581, at *3 (E.D. Pa. July 6, 2017) (citations omitted).

---

[1] The parties agree that the motion should be considered under a Rule 56 standard. Moving Br. at 10; Opp. at 6.

5

## III.     DISCUSSION

Plaintiff argues that he is not bound by the arbitration agreement found in Defendant's TOS because the agreement is invalid and unenforceable and, even in the event it is valid, some of his claims fall outside the scope of the arbitration agreement. *See generally* Opp. Specifically, Plaintiff argues that the agreement is unenforceable because he never assented to the agreement, and the terms of the agreement are ambiguous, were fraudulently induced, and are unconscionable. *Id.* at 11–27. Assuming there is a valid agreement, he further argues that his CFA claim exceeds the scope of the arbitration agreement, and thus should be decided by this Court. *Id.* at 8–11, 17–21. However, as explained further below, the Court finds that a valid arbitration agreement exists between the parties, and that the parties agreed to delegate questions regarding the scope of the arbitration agreement (i.e. arbitrability), including whether the agreement covers Plaintiff's CFA claim, to the arbitrator.[2]

### A.     Plaintiff Assented to the Arbitration Agreement

Plaintiff argues that he did not assent to Defendant's arbitration provisions because, upon downloading the game and viewing the game's launch screen, he did not see any notice pertaining to the TOS. *Id.* at 21–25. He further argues that he has never seen notice of the TOS while accessing the game, and he has never read the TOS. *Id.* Thus, Plaintiff argues that, as he was not on notice that the terms existed, he did not assent to be bound by them. *Id.* at 21–27. By contrast, Defendant argues that, before he could play the game, Plaintiff was presented with on-screen notice that by playing STFC he was agreeing to the TOS. Moving Br. at 11. Accordingly, Defendant argues that by subsequently playing STFC, Plaintiff assented to the TOS. *Id.* at 11–13.

---

[2] Because, as discussed below, the Court grants Defendant's motion to compel arbitration, it need not address Defendant's motion in the alternative to dismiss Plaintiff's First Amended Class Action Complaint.

As described above, in considering whether a valid agreement to arbitrate has been formed, the Court applies state law principles of contract formation. *See Torres*, 2018 WL 5669175, at *2. Under New Jersey law,[3] "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312 (N.J. 2014). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Id.* at 313. Such understanding can either be express or implied by conduct. *See James v. Global TelLink Corp.*, 852 F.3d 262, 266 (3d Cir. 2017). Even if the contract is the result of mutual assent, for an arbitration agreement to be valid, it must provide "clear and unambiguous language that the plaintiff is waiving his right to sue or go to court to secure relief." *Hubbard v. Comcast Corp. et. al.*, No. 18-cv-16090, 2020 WL 4188127, at *5 (D.N.J. July 21, 2020) (quoting *Atalese*, 99 A.3d at 315–16). Principles of contract law apply with equal force to online agreements. *Mucciariello v. Viator, Inc.*, No. 18-cv-14444, 2019 WL 4727896, at *3 (D.N.J. Sept. 27, 2019).

In determining whether a presentation of TOS like the one Defendant uses for STFC provides notice sufficient to establish mutual assent, courts consider whether "the terms are reasonably conspicuous on the webpage so that the user can be fairly charged with constructive notice that continued use will constitute acceptance of the agreement." *HealthplanCRM, LLC v.*

---

[3] The Court notes that Defendant's TOS state that California law applies "except as otherwise provided in the Arbitration Agreement." Arb. Agr. Section 10. Plaintiff argues that despite this provision, New Jersey law applies to the instant dispute because, as Plaintiff brings a CFA claim, New Jersey has a strong public policy interest in protecting its citizens from suffering consumer fraud. Opp. at 6–8. Defendant does not refute Plaintiff's position that New Jersey law applies, and relies heavily on New Jersey case law to support its own arguments. *See generally* Moving Br., Repl. Accordingly, because both parties apply New Jersey law, the Court does so as well. *See Kropke v. Dunbar,* No. 16-cv-8753, 2017 WL 8186746, at *3 (N.D. Cal. Mar. 2, 2017); *James v. Global Tel*Link Corp.*, No. 13-cv-4989, 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016). In any event, it appears that application of California law would not change the Court's conclusion. *See Jackson v. Rhino Entm't Co.*, No. 16-cv-1668, 2016 WL 11002546, at *4 n.6 (C.D. Cal. Nov. 10, 2016); *N.J. Best Phone Cards, Corp. v. NobelTel, LLC*, No. 13-cv-3598, 2013 WL 5937422, at *3 (D.N.J. Nov. 4, 2013).

*AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *James*, 582 F.3d at 267) (quotations omitted); *see also Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 259 A.3d 867, 875 (N.J. Super. App. Div. 2021). Where the terms or a hyperlink to the terms are placed in "obscure sections of a webpage that users are unlikely to see," there is no notice; however, where there is "explicit textual notice that continued use will act as a manifestation of the user's intent to be bound," a plaintiff may assent to the agreement through continued use. *James*, 852 F.3d at 267.

Here, upon downloading the game and before proceeding to game play, users must view an initial launch page. ECF No. 10-2 ("McGuire Decl.") at ¶ 5. This launch page appears to depict a spaceship in the foreground flying through space from the left side of the screen to the right, with a planetary body in the background. *Id*. at ¶ 6. In top left quadrant of the screen, in white letters set against a black background, appears the phrase "Star Trek Fleet Command." *Id*. In the middle of the screen, appearing in white letters against a black background is Defendant's notice of its TOS. The notice reads, "By continuing to play, you agree to our Terms of Service and to our use of cookies and similar technology. For more information see our Privacy Policy." *Id*. The words "Terms of Service" are in blue, bolded font, and contain a hyperlink, which, if clicked on by the player, directs the player to the TOS. *Id.* at ¶¶ 6–7.

Although Plaintiff states that he did not see this notice, it is reasonably conspicuous, and, accordingly, placed Plaintiff on constructive notice that by continuing to play STFC he was assenting to the TOS. The notice appears in the middle of the screen in a legible size, font, and color. The notice also contains a hyperlink written in blue, a color distinct from the rest of the notice, by which players can directly access Defendant's TOS. All players, including Plaintiff, must view this notice at least once as it is presented to them on STFC's launch page before they can begin playing the game. *See* Depo. Tr. at 36–37 (stating that Plaintiff viewed the launch screen

before playing STFC). Courts reviewing similar webpages have found that they provide the user with sufficient notice. *See HealthplanCRM, LLC.*, 458 F. Supp. 3d at 333 (finding sufficient notice where a link to the [TOS] was "not concealed at the bottom of a webpage or hidden in fine print . . . the blue hyperlink to access the [TOS] stands out against the white background of the log-in page and appears in a sentence which straightforwardly advises the user that" continued use constitutes assent); *see also Mucciariello*, 2019 WL 4727896, at *4 (finding that a user was adequately directed to view the TOS where a hyperlink was "highlighted in blue, in contrast to the surrounding black text"). Accordingly, Plaintiff was on constructive notice regarding Defendant's terms of service.

However, even if Defendant's launch screen did not put Plaintiff on constructive notice, he became aware of the TOS before filing his Complaint in this action in October 2019. In his deposition, Plaintiff stated that he learned about the TOS around April 2019. Depo. Tr. at 158–59. At that time, Plaintiff's lawyers told him Defendant "had terms of service . . . ," and Plaintiff admitted he "knew from then . . . [that Defendant] had terms of service." Depo. Tr. at 159. Plaintiff also stated that his lawyer told him "what [the TOS] meant and what it was." Depo. Tr. at 81. Further, Plaintiff became aware that the TOS included a section on arbitration. Indeed, Plaintiff reviewed and signed an engagement letter for the matter, which stated that "an arbitration provision in [Defendant's] Terms of Use" would be relevant to the outcome of litigation. Apple Cert., Exhibit 11A; Depo. Tr. at 64–65, 78–79. To the extent that Plaintiff argues he was not properly notified regarding the TOS because he has never read them (Opp. at 21–22), that argument lacks merit. Failure to read a TOS contract is insufficient grounds to excuse performance, unless "fraud or misconduct . . . prevented one from reading." *Cintron v. Monterey Fin. Servs., Inc.*, No. 17-cv-11537, 2018 WL 4908283, at *4 (D.N.J. Oct. 10, 2018) (quotations and citations omitted). While

9

Plaintiff alleges Defendant fraudulently induced STFC players to purchase upgrades to enhance their standing in the game, Plaintiff makes no allegations Defendant, through fraud or misconduct, prevented him from reading or accessing the TOS. Whether or not Plaintiff chose to read the terms, he was put on notice that Defendant had TOS, as of at least April 2019 when his lawyers explained them to him.

Moreover, after being placed on notice, Plaintiff assented to the TOS by continuing to play STFC. Where a terms of service notice contemplates an action to assent, taking that action indicates that a user assented to the terms. *See Beture v. Samsung Elecs. Am., Inc.* No. 17-5757, 2018 WL 4259845, at *5 (D.N.J. July 28, 2018) (finding that clicking an icon was an affirmative action demonstrating assent); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79–80 (2d Cir. 2017) (finding that creating an account on a mobile phone application constitutes assent to the application's terms of service). Plaintiff played STFC and made upgrade purchases after he was presented with the game's initial launch screen, which displayed the alert that by continuing to play the game, a user was assenting to the game's TOS. ECF No. 38-10. Plaintiff also stated that he continued to play STFC and make in-game purchases after he learned of the TOS from his lawyers. Depo. Tr. at 91 ("I still play today. I still play"), 92 ("[I] still on occasion make[] purchases in the game."). Accordingly, Plaintiff assented to the TOS by continuing to play STFC.

### B.     The Arbitration Agreement is Unambiguous

Further, Plaintiff argues that, even if he assented to the TOS, the arbitration agreement is invalid and unenforceable because it is ambiguous. Opp. at 11–14. Specifically, Plaintiff cites to portions of the TOS related to arbitration, which first provide that an individual "must generally" resolve his claims through arbitration, but later state that an individual "may seek to resolve" claims through arbitration. Arb. Agr. Sections 1, 9. Plaintiff argues the use of both mandatory and

permissive language does not clearly indicate that by assenting to the TOS an individual is bound to arbitration and waives the right to pursue relief through the courts. Opp. at 11–14.

An arbitration provision is valid if it provides "clear and unambiguous language that the plaintiff is waiving his right to sue or go to court to secure relief." *Hubbard*, 2020 WL 4188127, at *5. Here, the provision "must generally" is a mandatory phrase alerting users that arbitration is the sole method of dispute resolution under the TOS. *See Source Search Techs., LLC v. Lending Tree, LLC*, No. 04-4420, 2006 WL 3289942, at *2 (D.N.J. Nov. 13, 2006) ("The word 'must' is mandatory language."). The inclusion of "generally" does not transform the mandatory nature of the phrase into a permissive one. Instead, "generally" accounts for Section 9 of the TOS, which carves out two exceptions to the rule that disputes must be resolved by arbitration. Arb. Agr. Section 9. For those exceptions, intellectual property claims and claims not subject to arbitration as a matter of applicable law, claimants may bring their disputes in court. *Id.* Moreover, that arbitration is mandatory is further bolstered by other language in Section 9. *Id.* There, the TOS states, in relevant part, that the parties agree "to resolve any dispute arising out of or related to these [TOS] on an individual basis through final and binding arbitration." *Id.*

Plaintiff, however, argues that Section 9 still casts doubt on the clarity of the arbitration agreement. Specifically, Plaintiff asserts that this provision also states that an individual "may seek to resolve [disputes] through binding arbitration," meaning the agreement gives an individual a choice: to either arbitrate or pursue dispute resolution through a different avenue. Opp. at 13–14. This argument lacks merit. The TOS unambiguously establishes that a user of STFC must resolve any dispute through arbitration. Arb. Agr. Sections 1, 9. The ordinary meaning of the permissive language in Section 9 cited by Plaintiff indicates that the choice available to an individual under the agreement is whether to bring a claim at all. But if an individual chooses to bring a claim

11

against Defendant, that claim must be brought in arbitration. *See Noonan v. Comcast Corp.*, No. 16-cv-458, 2017 WL 4799795, at *7 –*8 (D.N.J. Oct. 24, 2017); *Kropke*, 2017 WL 8186746, at *5. Accordingly, the TOS unambiguously establishes that arbitration is the required method of dispute resolution.

Moreover, the arbitration agreement clearly states that by assenting to the TOS a user waives their right to pursue claims in court. The TOS states that the parties "both agree to give up our right to a trial before a judge or jury." Arb. Agr. Section 9. Section 9 goes on to explain how arbitration differs from a traditional court proceeding. *Id.* The inclusion of this information constitutes clear waiver that an individual is foregoing the right to bring their claim in court. *Noonan*, 2017 WL 4799795, at *7–*8 (finding an unambiguous waiver of right to pursue relief in the courts where the arbitration agreement "defin[es] what arbitration means, and goes on to describe the process in detail").

Thus, the arbitration agreement is unambiguous that a user must pursue its claims against Defendant through binding arbitration unless the claim satisfies an exception enumerated in the agreement. Further, as the agreement states that the parties waive their right to appear before a judge or jury, and explains the meaning of arbitration, the agreement contains sufficiently clear waiver. In sum, because Plaintiff assented to an unambiguous arbitration agreement, the agreement is valid.

### C. The Arbitration Agreement Was Not Fraudulently Induced

Plaintiff argues, however, that even if the arbitration agreement is valid, the agreement remains unenforceable because Defendant fraudulently induced the TOS. Opp. 14. Specifically, he argues that Defendant "engaged in a fraudulent and deceptive scheme by, *inter alia*, decreasing the value and effectiveness of virtual goods after their purchase by players, misrepresenting the

12

capabilities and benefits of virtual goods before purchase, and by allowing and engineering players to lose virtual goods they paid for." *Id.* at 15.

Arbitration provisions are subject to and may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center,* 561 U.S. at 68 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Generally, there are "two forms of fraud that may be alleged regarding an arbitration agreement—fraud in the inducement, and fraud in the execution." *Petrozzino et al. v. Vivint, Inc.*, No 20-cv-1949, 2020 WL 7778039, *4 (D.N.J. Dec. 31, 2020); *see also Rent-A-Center*, 561 U.S. at 71–72. "Fraud in the inducement induces a party to assent to something he otherwise would not have; fraud in the execution induces a party to believe the nature of his act is something entirely different than it actually is." *MZM Construction Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Fund*, 974 F.3d 386, 405 (3d Cir. 2020) (internal alterations and citations omitted). Fraud in the execution claims are for a court to decide, while fraud in the inducement claims are for the arbitrator. *See Droney et al. v. Vivint Solar*, No. 18-cv-849, 2018 WL 6191887, at *4 (D.N.J. Nov. 28, 2018). When presented with a fraud in the inducement claim, "a court may invalidate a contractual arbitration provision . . . only where 'the challenge . . . focus[es] exclusively on the arbitration provision, rather than on the contract as a whole.'" *Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-cv-21602, 2020 WL 6938353, at *5 (D.N.J. Nov. 25, 2020) (quoting *S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 143 (3d Cir. 2016)). By contrast, if the fraud in the inducement claim challenges "the contract as a whole, the validity of that contract, like all other disputes arising under the contract, *is a matter for the arbitrator to decide.*" *Id.* (emphasis in original); *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 446.

Here, although Plaintiff alleges claims for violations to the CFA and for legal fraud, he does not plead his allegations as either fraud in the inducement or fraud in the execution. *See generally* ECF No. 1-1. However, his First Amended Class Action Complaint and his submissions in opposition to the instant motion demonstrate that he challenges the validity of the entire TOS on fraud in the inducement grounds. *See Discovery House*, 2020 WL 6938353, at *5 (construing plaintiff's submissions to determine what kind of fraud claim has been brought); *Petrozzino*, 2020 WL 7778039, at *5 (construing the pleadings to determine whether plaintiff's CFA claim was brought as fraud in the inducement or in the execution). In his Complaint, Plaintiff alleges that Defendant made "intentional misrepresentations and omissions to the class members to induce them into purchasing virtual goods in STFC." ECF No. 1-1 at ¶ 86. Moreover, Plaintiff alleges that the "arbitration provisions in the Terms of Service were fraudulently induced by defendant." *Id.* at ¶ 44; *see also* at Opp. 14–16. While Plaintiff challenges the enforceability of the arbitration provisions, the Complaint and opposition submissions focus on the parties' general relationship under the terms—namely, the purchase of upgrades after a user agrees to play the game—not the terms of the arbitration agreement. Accordingly, the Court construes Plaintiff's claims as fraud in the inducement levied against the entire TOS, and, as a result, they are for the arbitrator to consider. Thus, Plaintiff's fraud defense does not render the arbitration agreement invalid. *See LoMonico et al. v. Foulke Mgmt. Corp. et al.*, No. 18-11511, 2020 WL 831134, at *6–*7 (D.N.J. Feb 20, 2020); *Quiroz v. Cavalry SPV I, LLC*, 217 F. Supp. 3d 1130, 1136–37 (C.D. Cal. 2016).

### D.      The Arbitration Agreement Is Not Unconscionable

Likewise, Plaintiff argues that the arbitration agreement is procedurally unconscionable, and, accordingly, is unenforceable. *Rent-A-Center,* 561 U.S. at 68. A contract is procedurally unconscionable if there are defects "in the process by which the contract was formed." *Pyo v.*

14

*Wicked Fashions, Inc.*, No. 09-cv-2422, 2010 WL 1380982, at *4 (D.N.J. Mar. 31, 2010) (citing *Sitogum Holdings, Inc. v. Ropes*, 800 A.3d 915, 921 (N.J. Super. Ct. Ch. Div. 2002)). Contracts of adhesion can be procedurally unconscionable because the contract "is presented on a take-it-or-leave-it basis, commonly in standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." *Uddin et al. v. Sears, Roebuck & Co., et al.*, No. 13-cv-6504, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2004) (quoting *Muhammad v. Cnty. Bank of Rehoboth Beach Del.*, 912 A.2d 88, 96 (N.J. 2006)). To determine whether a contract of adhesion is procedurally unconscionable, a court must consider the take-it-or-leave-it nature of the agreement as well as: "the parties' relative bargaining positions, [and] the degree of economic compulsion motiving the 'adhering' party." *Maity v. Tata Consultancy Servs., Ltd.*, No. 19-cv-19861, 2021 WL 6135939 at *6 (D.N.J. Dec. 29, 2021).

Here, Plaintiff argues that the arbitration agreement is procedurally unconscionable because the terms were offered in a take-it-or-leave-it fashion, making the TOS an adhesion contract. Opp. at 16–17. Even assuming that is the case, not all adhesion contracts are unconscionable. *See Falk v. Aetna Life Ins. Co., et al.*, No. 19-cv-434, 2019 WL 4143882, at *5 (D.N.J. Aug. 31, 2019). Faced with the TOS, Plaintiff could have chosen not to play STFC and later suffer none of the consequences he alleges he ultimately did. *Id.* Indeed, Plaintiff's decision to play the game was motivated by his Star Trek fandom, not due to any economic compulsion or necessity. Depo. Tr. at 23–25. Accordingly, Plaintiff's procedural unconscionability argument fails.

### E.   Scope of the Arbitration Agreement

As described above, after determining that a valid arbitration agreement exists, courts must determine "whether the merits-based dispute in question falls within the scope of that valid

15

agreement." *Flintkote Co.*, 769 F.3d at 220. The Supreme Court has instructed that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. When an arbitration agreement "delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Notwithstanding an otherwise valid arbitration agreement, a party may challenge the provision delegating arbitrability to the arbitrator, but the party must do so specifically. *See Cavallo v. Uber Techs., Inc.*, No. 16-cv-4264, 2017 WL 2362851, at *4 (D.N.J. May 31, 2017) (citing *Rent-A-Car*, 561 U.S. at 72).

Plaintiff challenges the scope of the arbitration agreement on three grounds. First, he argues that there is no valid arbitration agreement, and, without one, the Court, not an arbitrator, must resolve his claims. Opp. at 18–17. However, the Court has rejected this argument *supra* as it has found that a valid arbitration agreement exists between the parties.

Second, Plaintiff further argues that, even if a valid arbitration agreement exists, the delegation clause is unenforceable because this provision is not "clear and unmistakable as required." *Id.* at 20–21. This argument, too, is unavailing. The TOS delegation clause unambiguously states "if we have a dispute about whether this agreement to arbitrate can be enforced, we all agree that the arbitrator will decide that too, rather than a court or other agency." Arb. Agr. Section 9. Moreover, the arbitration agreement states any arbitration will proceed before an American Arbitration Association ("AAA") arbitrator, pursuant to AAA rules. *Id*. In turn, the AAA's rules and procedures give the arbitrator the ability to decide whether the arbitrator has jurisdiction to hear the matter, including the scope of an arbitration agreement. *See* AAA Commercial Arbitration Rules, R-7(a) ("The arbitrator shall have the power to rule on his or her

16

own jurisdiction, including . . . scope."). The inclusion of AAA rules in the arbitration agreement constitutes "clear and unmistakable evidence that the parties agreed to delegate arbitrability." *Richardson v. Covernall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases) (stating that all eleven circuits addressing this issue found that "incorporation of AAA rules (or similarly worded arbitral rules) provides clear and unmistakable evidence that the parties agreed to arbitrate 'arbitrability'"). Accordingly, the TOS contains a valid delegation clause, and any questions regarding the scope of the agreement are to be decided first by the arbitrator.

Third, Plaintiff argues that even if the delegation clause of the arbitration agreement is valid, his CFA claim is not covered because the agreement does not apply to statutory rights, nor has he agreed to arbitration his CFA claim. Opp. at 8–11 (citing Arb. Agr. Section 8 ("[N]othing in these Terms will affect the statutory rights of any consumer.")). However, the argument lacks merit. "New Jersey courts have held 'that claims arising under the CFA may be heard and resolved through arbitration,'" *Waller et al. v. Foulke Mgmt. Co. et al.* No. 10-cv-6342, 2011 WL 3611405, at *5 (D.N.J. Aug. 11, 2011) (citation omitted), and, in any event, whether the arbitration agreement covers the CFA claim is a question of scope, which the parties have unambiguously delegated to the arbitrator.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to compel arbitration is granted. An appropriate Order accompanies this Opinion.

DATED: January 25th, 2022

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
